FILED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

2014 NOV -5 P 2: 57

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

JASON DANIEL HEAP
and THE HUMANIST SOCIETY,

          Plaintiffs,

vs.

HON. CHARLES T. HAGEL,
HON. RAYMOND E. MABUS, JR.,
VICE ADMIRAL WILLIAM F. MORAN,
REAR ADMIRAL MARK L. TIDD,
REAR ADMIRAL ANNIE B. ANDREWS,
REAR ADMIRAL MARGARET G.
KIBBEN,
HON. JESSICA L. GARFOLA WRIGHT,
REAR ADMIRAL BRENT W. SCOTT,
MAJOR GEN. HOWARD D. STENDAHL,
BRIGADIER GEN. BOBBY V. PAGE,
MAJOR GEN. DONALD L.
RUTHERFORD,
BRIGADIER GEN. CHARLES R.
BAILEY,
REAR ADMIRAL DANIEL L. GARD,
REAR ADMIRAL GREGORY C. HORN,
THE UNITED STATES NAVY,
THE UNITED STATES DEPARTMENT
OF DEFENSE, and John and Jane Does #
1-40,

          Defendants.

Case No.: 1:14CV1490

**COMPLAINT**

**JURY TRIAL DEMAND**

Plaintiffs Jason Daniel Heap and The Humanist Society, by and through their counsel, allege as follows:

## NATURE OF THE ACTION

1.      This lawsuit challenges the United States Navy's rejection of an application by Jason Daniel Heap to serve in the U.S. Navy Chaplain Corps because of Dr. Heap's Humanist religious beliefs. This lawsuit also challenges the Navy's refusal to recognize The Humanist Society as a religious organization qualified to endorse candidates for the Navy chaplaincy.

2.      Plaintiff Jason Daniel Heap is an Oxford University-educated instructor in history and theology who has spent ten years leading religious services and teaching in the United States and internationally. Dr. Heap is a Humanist and is certified as a Humanist Celebrant by The Humanist Society, a § 501(c)(3) tax-exempt organization qualified as a church under the Internal Revenue Code. As a Celebrant, Dr. Heap is deemed qualified by The Humanist Society to lead services, give ceremonial invocations, officiate at funerals and weddings, and perform other ritual functions that are also performed in other religious traditions.

3.      As a Humanist, Dr. Heap does not believe in a god or gods. He believes in a system of ethical principles that are as central and guiding as the moral precepts developed in religious traditions that believe in a god or gods. Dr. Heap agrees with the Humanist Manifesto III, *Humanism and Its Aspirations*, which describes central tenets of the Humanism practiced by The Humanist Society. He adheres to these beliefs with the strength and sincerity of traditionally recognized religious views.

4.      "The primary function of the military chaplain is to engage in activities designed to meet the religious needs of a pluralistic military community . . . ." *Katcoff v. Marsh*, 755 F.2d 223, 226 (2d Cir. 1985) (denying facial attack on constitutionality of U.S. Army chaplaincy).

2

Plaintiffs allege that as applicants to become part of the "pluralistic military community," Humanist applicants and their endorsing religious organizations cannot be denied access to the Navy chaplaincy because of their Humanist beliefs.

5.      After consulting with religious and academic colleagues and mentors, Dr. Heap applied to become a chaplain in the U.S. Navy Chaplain Corps. Navy representatives initially welcomed and encouraged Dr. Heap. His Navy chaplain recruiter offered to expedite his application in order to ensure its speedy approval. A retired U.S. Marine Corps chaplain gave Dr. Heap a perfect score in his formal review of Dr. Heap's application.  In response to the Navy's encouragement, Dr. Heap made personal and financial sacrifices to advance his application, including paying out-of-pocket for several international trips necessary to the application process, medical examination fees, and relinquishing his British legal residency status and the significant benefits attendant thereto.

6.      Department of Defense and Navy guidelines require chaplain applicants to obtain the endorsement of a qualified religious organization in support of their applications. Navy recruiters assumed Dr. Heap would apply as a Christian. However, the Navy learned that Dr. Heap is a Humanist after The Humanist Society submitted its endorsement to the Armed Forces Chaplains Board in support of Dr. Heap's application.

7.      On or about the same time that Dr. Heap submitted his endorsement from The Humanist Society, a political and media firestorm erupted over his application. Members of Congress and advocacy groups sent letters to the Navy and Department of Defense opposing Dr. Heap's application on the ground that he is a Humanist. Advocacy groups lobbied Congress to prevent federal funding from being used to support a Humanist chaplain, and legislation was

introduced in the United States House of Representatives to deny federal funding for any Humanist chaplain.

8.      After the Navy learned that Dr. Heap is a Humanist, and in the midst of public controversy, the Navy's attitude changed radically. Dr. Heap's Navy recruiter informed Dr. Heap that his Humanist endorsement could pose a problem for his application. All discussion of expediting Dr. Heap's application ceased. Dr. Heap's disclosure of his religious beliefs prompted an eleven-month delay. Only after legal counsel for The Humanist Society contacted the Navy and threatened litigation did the Navy grant Dr. Heap an interview. Less than three weeks after his interview, the Navy denied Dr. Heap's application, without providing any reason for the denial.

9.      Dr. Heap's application was not denied because of any fault in his abilities or credentials or because a better-qualified applicant emerged to take his place. Dr. Heap's qualifications and experience far exceed the standards articulated by the Navy for accepting applicants. Rather, the Navy denied his application because of his Humanist beliefs. The Religious Freedom Restoration Act and the U.S. Constitution's Religious Test Clause and First and Fifth Amendments prohibit the Navy's discriminatory denial of Dr. Heap's application on the basis of his religious views.

10.      According to statistics compiled by the Department of Defense Equal Opportunity Management Institute, 3.6 percent of the U.S. military identifies as Humanist. As a result of the Navy's decision to deny Dr. Heap's application, there are no Humanist chaplains in the U.S. Navy or in any branch of the armed services. The absence of even a single Humanist chaplain impairs the religious exercise of Humanists in the Navy, some of whom are members of The Humanist Society. In addition, because of the Navy's refusal to admit Dr. Heap as chaplain, the

Navy and Armed Forces Chaplains Board require The Humanist Society to undergo a more rigorous administrative review of The Humanist Society's qualifications to act as the endorser of chaplains in the Navy and other branches of the armed services.

11.     As a remedy for the Navy's discriminatory denial of Dr. Heap's application, and the Department of Defense's refusal to recognize The Humanist Society as a qualified religious endorser because of their Humanist convictions, Plaintiffs seek instatement of Dr. Heap as a Navy chaplain and recognition of The Humanist Society as a qualified endorser, backpay, monetary damages, attorney's fees and costs, and other declaratory and equitable relief.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction under 28 U.S.C. §§ 1331 & 1346, 5 U.S.C. § 702, 29 U.S.C. § 1391(e), and Va. Code Ann. § 8.01-328.1.

13.     Venue is appropriate under 28 U.S.C. § 1391(e) because the defendants sued in their official capacities are federal agencies and their officers and employees, and at least one of these defendants' offices is located in this district. At least one defendant named in his/her official capacity performs a substantial part of his/her official duties in this district. Venue is also appropriate under 28 U.S.C. § 1391(e) because Plaintiff Jason Daniel Heap is a resident of this district.

14.     Venue is appropriate under 28 U.S.C. § 1391(b) because at least one of the defendants named in their individual capacities is a resident of this district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

A.    **Plaintiffs**

15.    Jason Daniel Heap is a Humanist Celebrant accredited by The Humanist Society. Dr. Heap currently serves as Coordinator of the United Coalition for Reason, a nonprofit organization that helps nontheistic groups work together to gain more members and have a greater impact in their local areas. Dr. Heap has taught courses on religion and philosophy at elementary and secondary schools in the United Kingdom, Kuwait, and Nigeria since 2004. Prior to his teaching career, Dr. Heap served as a licensed minister of First Baptist Church in LaGrange, Texas, and delivered sermons and conducted worship services at Methodist, Baptist, and other Christian churches from 1991 until 2000. Dr. Heap's academic degrees include a Doctor of Education in Administrator Leadership for Teaching and Learning from Walden University; a Master of Studies from The University of Oxford in Ecclesiastical History, awarded by the Faculty of Theology; a Master of Divinity in Counselling and Religion from Brite Divinity School of Texas Christian University; and a Bachelor's in Philosophy and Practical Theology (double majors) from Howard Payne University in Brownwood, Texas. Dr. Heap resides within this district in Arlington, Virginia.

16.    The Humanist Society is a § 501(c)(3) organization incorporated under California law and qualified as a church under Internal Revenue Code § 170(b)(1)(A)(i). Founded in 1939, The Humanist Society provides ministry to a lay constituency of Humanists adhering to the values of the Humanist Manifesto III. The Society prepares Humanist Celebrants to lead ceremonial observances, including weddings and funerals, across the nation and worldwide, and seeks to strengthen Humanist communities by providing resources about Humanism and access to Humanist Celebrants. The Humanist Society maintains an active membership, including

members who are enlisted in the United States Navy. The Humanist Society provided the Armed

Forces Chaplains Board with its endorsement of Jason Heap as an applicant to become a Navy

Chaplain and all required administrative documentation.

### B.   Navy Defendants

17.     The following individuals named as Defendants are officers and/or employees of

the United States Navy and are referred to collectively as the "Navy Defendants."

18.     The Honorable Raymond E. Mabus, Jr. is the Secretary of the United States Navy.

He assumed office on June 18, 2009. He is named in his official capacity as civilian head of the

co-defendant organization The United States Navy (the "Navy"). His office as Secretary of the

United States Navy is located in the Pentagon in Arlington, Virginia. Secretary Mabus carries out

his official duties in part at the United States Naval facilities in Norfolk, Virginia, and in

Arlington, Virginia.

19.     The United States Navy is a military department of the U.S. Armed Forces

created by an Act of Congress. 10 U.S.C. § 5011 *et seq.* The Navy Chaplain Corps is a branch of

the Navy. 10 U.S.C. § 5142. The Navy's official headquarters are located in the Pentagon in

Arlington, Virginia. The Navy maintains other ongoing and systematic contacts with this district,

including the Naval Support Facility located at 701 South Courthouse Road in Arlington,

Virginia, and the Naval Station in Norfolk, Virginia.

20.     Vice Admiral William F. Moran is the Chief of Naval Personnel. Defendant

Moran assumed office on August 2, 2013. According to Navy regulations, the Chief of Naval

Personnel is responsible for making the final determination as to whether applications to serve as

Navy chaplain are accepted or denied. *See* Secretary of the Navy Instruction ("SECNAVINST")

5351.1 ¶ 5.c (April 21, 2011).  Defendant Moran serves as Deputy Chief of Naval Operations

concurrently with his position as Chief of Naval Personnel. Defendant Moran's principal office

in his capacity as Deputy Chief of Naval Operations is located at the Naval Support Facility located at 701 South Courthouse Road in Arlington, Virginia. On information and belief, and based on Navy regulations, Defendant Moran made and/or approved the final determination to deny Jason Heap's application to become a Navy chaplain because of Dr. Heap's and the Humanist Society's Humanist convictions. His office as Chief of Naval Personnel is located in the Pentagon in Arlington, Virginia. In his capacity as Chief of Naval Personnel and as Deputy Chief of Naval Operations, Defendant Moran maintains ongoing and systematic contacts with this district by supervising all Navy personnel matters at Navy facilities in this district, including the Naval Support Facility in Arlington, Virginia, and the Naval Station in Norfolk, Virginia. Defendant Moran is named in his official capacity.

21.    Rear Admiral Annie B. Andrews is Commander, Navy Recruiting Command. She assumed office on August 29, 2013. In her capacity as Commander, Navy Recruiting Command, Rear Admiral Andrews maintains ongoing and systematic contacts with this district by supervising and directing the operation of permanent Navy recruiting centers located in this district, including the Navy Recruiting District headquarters in Richmond, Virginia. According to Navy regulations, the Commander, Navy Recruiting Command may determine on behalf of the Deputy Chief of Naval Operations whether an applicant is qualified for a Navy chaplaincy. *See* Chief of Naval Operations Instruction ("OPNAVINST") 1120.9 ¶ 6.b.2 (Dec, 20, 2005). Based on these regulations, and upon information and belief, Defendant Andrews made and/or approved the final determination to deny or recommend the denial of Dr. Heap's application because of his and the Humanist Society's Humanist convictions. She is named in her official and individual capacities.

22.    Rear Admiral Margaret G. Kibben is the current Chief of Navy Chaplains. She assumed office on August 1, 2014. As Chief of Navy Chaplains, Defendant Kibben currently serves on the Armed Forces Chaplains Board ("AFCB"). *See* Department of Defense Instruction ("DODI") 5120.08 ¶ 5.1.1 (August 20, 2007). From July 2010 until August 1, 2014, Defendant Kibben served as Navy Deputy Chief of Chaplains. While serving as Navy Deputy Chief of Chaplains, Defendant Kibben also served on the Armed Forces Chaplains Board. In her capacities as Chief of Chaplains and Deputy Chief of Chaplains, Defendant Kibben maintains ongoing and systematic contacts with this district by supervising Navy chaplains located at Navy installations in this district, including the United States Navy facilities in Norfolk, Virginia. According to Navy regulations, the Chief of Navy Chaplains is responsible for approving or disapproving the recommendation of the Chaplain Appointment and Retention Eligibility Board ("CARE Board") as to individual applications for the Navy chaplaincy. SECNAVINST 5351.1 ¶ 5.c. On information and belief, and based on Navy regulations, Defendant Kibben's predecessor in office, Rear Admiral Mark L. Tidd, made and/or approved the decision to deny or recommended denying Jason Heap's application because Dr. Heap and his endorser, The Humanist Society, are Humanists. As a member of the AFCB, Defendant Kibben made and/or approved the decision to deny or recommend denying The Humanist Society's application for recognition as a religious organization qualified to endorse Navy chaplains. Defendant Kibben's office as Chief of Navy Chaplains is located in the Pentagon in Arlington, Virginia. She resides within this district at 6914 Park Terrace Drive, Alexandria VA 22307. She is named in her individual and official capacities.

23.    Rear Admiral (Ret.) Mark L. Tidd is the former Chief of Navy Chaplains. He assumed office as Chief of Navy Chaplains on August 27, 2010, and retired on August 1, 2014.

9

While serving as Chief of Chaplains, Defendant Tidd also served on the Armed Forces Chaplains Board. As Chief of Navy Chaplains, Defendant Tidd was responsible for approving or disapproving the recommendation of the CARE Board as to Dr. Heap's application to become a Navy chaplain. SECNAVINST 5351.1 ¶ 5. On information and belief, and based on Navy regulations, Defendant Tidd made and/or approved the decision to deny or recommended denying Dr. Heap's application because he and his endorser, The Humanist Society, are Humanists. As a member of the AFCB, Defendant Tidd made and/or approved the decision to deny or recommend denying The Humanist Society's application for recognition as a religious organization qualified to endorse Navy chaplains. On information and belief, Defendant Tidd made the decision to approve or disapprove Dr. Heap and the Humanist Society's applications in the Pentagon located in Arlington, Virginia. Defendant Tidd is named in his individual capacity.

24.    John and Jane Does # 1-20 are the members of the May 2014 CARE Board that reviewed Dr. Heap's application to become a U.S. Navy chaplain. They are Navy and Marine Corps commissioned officers. Chief of Chaplains Instruction ("COCINST") 1110.1H ¶ 4 (May 8, 2007). They will be identified and named after discovery. According to Navy regulations, the CARE Board is responsible for interviewing and providing a recommendation to approve or disapprove individual applicants for the Navy chaplaincy. COCINST 1110.1H ¶¶ 5, 8. Based upon these regulations, and upon information and belief, John and Jane Does # 1-20 made the decision to deny and/or recommended denying Jason Heap's application because he and his endorser, The Humanist Society, are Humanists. John and Jane Does # 1-20 are sued in their official capacities, and also in their individual capacities to the extent that they reside in this district.

C.    **Armed Forces Chaplains Board Defendants**

25.    The following individuals named as Defendants are officers and/or employees of the U.S. Department of Defense with authority or control over the Armed Forces Chaplains Board ("AFCB") and are referred to collectively as the "AFCB Defendants." According to Department of Defense and Navy regulations, all applicants to become chaplain must receive the endorsement of a qualified religious organization. *See* Department of Defense Instruction ("DODI") 1304.28 ¶ 6.1 The determination of whether the organization may serve as a qualified endorsing agency is made by the AFCB or by the Under Secretary of Defense for Personnel and Readiness, acting upon the recommendation of the AFCB. *See* DoDD 5120.08 ¶ 3 & 1304.19 ¶ 5.2.1 (April 23, 2007). The AFCB must consist of the Chief and active Deputy Chief of Chaplains from the Navy, Army, and Air Force. DoDD 5120.08 ¶ 5.1.1. Upon information and belief, and based on these regulations, the AFCB refused to recognize The Humanist Society as a qualified religious endorsing organization in support of Dr. Heap's application to become a chaplain because Dr. Heap and the Humanist Society are Humanists.

26.    The Honorable Charles T. Hagel is the United States Secretary of Defense. He assumed office on February 27, 2013. Defendant Hagel resides in McLean, Virginia. His office as Secretary of Defense is located in the Pentagon in Arlington, Virginia. Defendant Hagel is named in his official capacity as civilian head of the co-defendant organization The United States Department of Defense ("DoD").

27.    The United States Department of Defense is an executive branch department of the federal government created by an Act of Congress. 10 U.S.C. § 111. The Armed Forces Chaplains Board is a subordinate body of the Department of Defense governed by Department of Defense directives. *See* DoDD 5120.08 (Aug. 20, 2007). The Department of Defense's Headquarters are located in the Pentagon in Arlington, Virginia. The Department of Defense

maintains other ongoing and systematic contacts with this district, including operating and maintaining the U.S. Marine Corps base located in Quantico, Virginia.

28.     The Honorable Jessica L. Garfola Wright is the Under Secretary of Defense for Personnel and Readiness. She assumed office on January 1, 2013. According to Department of Defense directives, Defendant Wright is responsible for receiving the recommendations of the Armed Forces Chaplains Board on "religious, ethical, and moral standards for the Military Services" and policies for "the protection of the free exercise of religion according to Amendment I to the Constitution of the United States . . . ." DoDD 5120.08 ¶ 5. On information and belief, and based upon these regulations, Defendant Wright made the final determination to deny The Humanist Society recognition as a qualified ecclesiastical endorsing agency because of its Humanist convictions. In her capacity as Under Secretary of Defense for Personnel and Readiness, Defendant Wright maintains ongoing and systematic contacts with this district by supervising personnel matters at DoD facilities located in Virginia. Her office as Under Secretary of Defense for Personnel and Readiness is located in the Pentagon in Arlington, Virginia. She resides at 9372 Colbert Ct., Fairfax, Virginia 22032. She is sued in her individual and official capacities.

29.     Defendant Margaret G. Kibben, also named above, is currently a member of the AFCB in her capacity as Navy Chief of Chaplains, and was a member of the AFCB in her capacity as Navy Deputy Chief of Chaplains from July 2010 until her appointment as Navy Chief of Chaplains. As a member of the AFCB that received The Humanist Society's application to act as religious endorser, Defendant Kibben denied or recommended the denial of The Humanist Society's application because of its Humanist convictions.

30.    Defendant Mark L. Tidd, also named above, was a member of the AFCB in his capacity as Navy Chief of Chaplains from August 27, 2010 until August 1, 2014. As a member of the AFCB that received The Humanist Society's application to act as religious endorser, Defendant Tidd denied or recommended the denial of The Humanist Society's application because of its Humanist convictions.

31.    Rear Admiral Brent W. Scott has served as Navy Deputy Chief of Chaplains since July 2014. In that capacity, Defendant Scott currently serves on the AFCB. In his capacity as Navy Deputy Chief of Chaplains, Defendant Scott maintains ongoing and systematic contacts with this district by supervising Navy chaplains located at Navy installations in this district, including the United States Navy facilities in Norfolk, Virginia. He is named in his official capacity. He resides at 12319 Sleepy Lake Ct, Fairfax, Virginia 22033.

32.    Major General Howard D. Stendahl has served as Air Force Chief of Chaplains since August 2012. Defendant Stendahl has served on the AFCB since his appointment as Air Force Chief of Chaplains. Defendant Stendahl's office as Air Force Chief of Chaplains is located in the Pentagon in Arlington, Virginia. Defendant Stendahl maintains ongoing and systematic contacts with this district by supervising Air Force chaplains located in this district, including at Langley Air Force Base. Defendant Stendahl served as Command Chaplain at Langley Air Force Base until March 2011. He is named in his official capacity.

33.    Brigadier General Bobby V. Page has served as Air Force Deputy Chief of Chaplains since August 2012. Defendant Page has served on the AFCB since his appointment as Air Force Deputy Chief of Chaplains. Defendant Page maintains ongoing and systematic contacts with this district by supervising Air Force chaplains located in this district, including at

13

Langley Air Force Base. Defendant Stendahl served as Command Chaplain at Langley Air Force Base until June 2009. He is named in his official capacity.

34.     Rear Admiral Daniel L. Gard has served as Navy Deputy Chief of Chaplains for Reserve Matters since October 1, 2013. He has served on the AFCB since his appointment as Navy Deputy Chief of Chaplains for Reserve Matters. In his capacity as Navy Deputy Chief of Chaplains for Reserve Matters, Defendant Gard maintains ongoing and systematic contacts with this district by supervising chaplain support for Reservists serving at Navy installations in this district, including the United States Navy facilities in Norfolk, Virginia. He is named in his official capacity.

35.     Rear Admiral Gregory C. Horn has served as Deputy Chief of Chaplains for Reserve Matters and Director of Religious Programs, Marine Forces Reserve, from October 7, 2010, until September 23, 2013. As Deputy Chief of Chaplains for Reserve Matters and Director of Religious Programs, Defendant Horn served on the AFCB that received The Humanist Society's application to act as religious endorser.  On information and belief, Defendant Horn denied or recommended the denial of The Humanist Society's application because of its Humanist convictions. Rear Admiral Horn's principal office was located in the U.S. Marine Corps Headquarters located at 1555 S. Southgate Road in Arlington, Virginia. On information and belief, Defendant Horn made and/or participated in the decision to deny or recommend the denial of The Humanist Society's application at the Pentagon or Marine Corps Headquarters located in this district. Defendant Horn is named in his individual capacity.

36.     Major General Donald L. Rutherford has served as Army Chief of Chaplains since July 7, 2011. He has served on the AFCB since his appointment as Army Chief of Chaplains. As a member of the AFCB that received The Humanist Society's application to act as

14

religious endorser, on information and belief, Defendant Rutherford denied or recommended the denial of The Humanist Society's application because of its Humanist convictions. He resides at 5435 Woodlawn Drive, Fort Belvoir, Virginia, 22060. Defendant Rutherford's office as Army Chief of Chaplains is located in the Pentagon in Arlington, Virginia. In his capacity as Army Chief of Chaplains, Defendant Rutherford maintains ongoing and systematic contacts with this district by supervising Army chaplains located at Army installations in this district, including in the U.S. Army base in Fort Lee, Virginia. Defendant Rutherford is named in his individual and official capacities.

37.    Brigadier General Charles R. Bailey has served as Deputy Army Chief of Chaplains since July 28, 2011. He has served on the AFCB since his appointment as Army Chief of Chaplains. As a member of the AFCB that received The Humanist Society's application to act as religious endorser, on information and belief, Defendant Bailey denied or recommended the denial of The Humanist Society's application because of its Humanist convictions. He resides at 20610 Brumley Gap Road, Abingdon, Virginia 24210. In his capacity as Deputy Army Chief of Chaplains, Defendant Bailey maintains ongoing and systematic contacts with this district by supervising Army chaplains located at Army installations in this district, including in the U.S. Army base in Fort Lee, Virginia. Defendant Bailey is named in his individual and official capacities.

38.    John and Jane Does # 21-30 are additional current members of the Armed Forces Chaplains Board. They are all officers and/or employees of the United States Navy, Army, or Air Force. *See* DoDI 5120.08 ¶ 5 (August 20, 2007). They will be identified and named after discovery. They are named in their official capacities.

39.     John and Jane Does # 31-40 are additional members of the Armed Forces Chaplains Board between July 1, 2013 and May 27, 2014 who reside in this district. On information and belief, and based on DoD regulations establishing the responsibility and authority of the AFCB, these individuals denied or recommended the denial of The Humanist Society's application because of its Humanist convictions. They are named in their individual capacities.

## FACTUAL ALLEGATIONS

**II.     DEFINITIONS**

40.     **Humanism.** "Humanism" as described herein is the belief system followed by Jason Daniel Heap and the Humanist Society, Dr. Heap's endorsing agency. Humanists of the Humanist Society, including Jason Daniel Heap, identify with the *Humanist Manifesto III: Humanism and its Aspirations*, drafted in 2003 by the American Humanist Association as a contemporary expression of Humanist beliefs. *See* American Humanist Society, *Humanist Manifesto III* (2003), http://americanhumanist.org/humanism/Humanist_Manifesto_III ("Manifesto III"). The Manifesto identifies ethical principles that are as central and guiding as the moral precepts developed in religious traditions that emphasize the centrality of a god or gods. Unlike such traditions, Humanism emphasizes ethical principles as avenues to the ultimate goal of human flourishing, regardless of the existence of a god or gods, based upon fundamental commitments that address basic questions such as the nature and source of humanity's obligations toward one another, the place of humanity in nature, and the ultimate goals and purposes of life. Adherents to Humanism are referred to as "Humanists."

41.     **Theism** and **Non-Theism.** "Theism" refers to a belief system that is organized around and requires the existence of a god or gods. "Non-theism" refers to a belief system that, like Humanism, is not organized around, and does not require, the existence of a deity.

16

42.     **Atheism**. "Atheism" means a lack of a belief in a god or gods. In common usage, atheism may mean anti-theism, belief that there is no god, or may be used as a personal identifier for someone who otherwise holds Humanist beliefs. The term Atheist is under-inclusive as used to describe Humanists, because Humanists share a common belief system that goes beyond denial of the existence of a god or gods.

43.     **Agnosticism**. "Agnosticism" refers to a belief system positing that the existence or non-existence of a god is unknowable.

## III.    BACKGROUND OF THE U.S. NAVY CHAPLAINCY PROGRAM

### A.    The Navy's System for Chaplain Recruitment

44.     The U.S. Navy Chaplain Corps is established by statute and administered pursuant to regulations prescribed by the Secretary of the Navy. *See* 10 U.S.C. § 5142(a) (1997).

45.     Chaplain recruitment is governed by Secretary of the Navy Instruction ("SECNAVINST") 5351.1 and Department of Defense Instruction ("DoDI") 1304.28. SECNAVINST 5351.1 provides that applications for a Navy chaplaincy are reviewed by a Chaplain Appointment and Retention Eligibility Advisory Group ("CARE Board"). The CARE Board "reviews professional qualifications and forwards a recommendation regarding a [chaplain applicant] to the [U.S. Navy Chief of Chaplains] . . . ." SECNAVINST 5351.1. ¶ 5(c). If the CARE Board certifies the applicant's professional qualifications, the Deputy Chief of Naval Operations, or the Commander, Navy Recruiting Command acting on behalf of the Deputy Chief, makes a determination "whether the applicant is otherwise qualified for a commission as a chaplain." Chief of Naval Operations Instruction ("OPNAVINST") 1120.9 ¶ 6.b.2. Under the regulations, "[n]o applicant shall be appointed as a Chaplain Corps officer without these determinations." *Id.* The Chief of Chaplains, in turn, "approves or disapproves the

17

recommendation and then forwards it to the [Chief of Naval Personnel]," who makes the final determination as to whether the applicant is accepted or denied. SECNAVINST 5351.1 ¶ 5.c.

46.      An applicant for the chaplaincy must also demonstrate that the applicant has received the endorsement of a qualified religious organization by submitting a form DD 2088, which identifies the endorsing organization and evidences the organization's endorsement of the applicant. *See* DoDI 1304.28 ¶ 6.1 (2014).

47.      Department of Defense ("DoD") and Navy instructions create a two-track system for endorsements submitted by religious organizations. If the applicant's endorsing organization has previously endorsed an applicant who was accepted, the applicant need file only a single form indicating the ecclesiastical endorsement of his or her religious organization. *Id.* ¶ 6.1.1.1. The Armed Forces Chaplains Board keeps an official list of organizations that receive this preferential treatment. *See* Department of Defense, Office of the Under Secretary for Personnel and Readiness, *Ecclesiastical Endorsing Agents*, http://prhome.defense.gov/RFM/MPP/AFCB/Endorsements.aspx (accessed August 6, 2014).

48.      If, however, the Navy has *not* accepted a chaplain candidate endorsed by the endorsing organization, the organization must submit additional documentation and obtain the approval of the Armed Forces Chaplains Board ("AFCB") to become a recognized endorser. *See* DODI 1304.28 ¶ 6.1.1.2. That documentation must demonstrate that the religious organization:

- "is organized as an entity functioning primarily to perform religious ministries to a non-military lay constituency and currently holds a section 501(c)(3) exempt status . . . as a church for Federal tax purposes from the Internal Revenue Service . . . ." DoDI 1304.28 ¶ E3.1.3.1;

- "possesses ecclesiastical authority to grant and withdraw initial and subsequent ecclesiastical endorsement for ministry in the Armed Forces," *id.* ¶ E3.1.3.2;

- "verifies the religious organization shall provide chaplains who shall function in a pluralistic environment . . . and who shall support directly and indirectly the free exercise of religion by all members of the Military Services, their family

18

members, and other persons authorized to be served by the military chaplaincies" *id.* ¶ E3.1.3.3; and

- "agrees to abide by all DoD Directives, Instructions, and other guidance and with Military Department regulationss and policies on the qualification and endorsement of RMPs for service as military chaplains." *Id.* ¶ E3.1.3.4.

49.    A chaplain applicant's endorsing religious organization must be approved by the Armed Forces Chaplains Board in order for his or her application to be accepted. *See* OPNAVINST 1120.9 ¶ 6.a.6; DODI 1304.28 ¶ 6.1.

## B.    The Navy and AFCB's Refusal to Recognize Humanism as Religion

50.    According to an analysis of official Department of Defense statistics, approximately 30% of service members self-identify as atheist, agnostic, or as having no religious preference at all. [1] Although not all of these service members espouse Humanism, a Humanist chaplain is well equipped to minister to, at a minimum, this portion of the Navy population because Humanists are committed to ecumenism and are not required to advocate belief in a god as a matter of religious doctrine.

51.    In addition, 3.6% of the military as a whole specifically identifies as Humanist, which is a larger percentage than any non-Christian denomination and is equivalent to the representation of some Christian denominations, such as Methodists. *See Religious Diversity in the U.S. Military*, Military Leadership Diversity Commission (June 2010), *available at* http://militaryatheists.org/resources/MLDC-RIPSdemographics.pdf. Several of these self-identified Humanists are enlisted in the Navy and are members of The Humanist Society.

52.    The Navy professes to recruit "from a wide variety of sources in furtherance of maintaining a diverse chaplain corps . . . ." SECNAVINST 5351.1. ¶ 5.aa. The Navy claims that

---

[1] 2012 MAAF Department of Defense Religious Preference and Chaplain Support Study, http://www.militaryatheists.org/resources/MAAF%20DoD%20Demo%202012.xlsx (accessed July 30, 2014).

"[c]onsideration is given to religious diversity, particularly where a [chaplain candidate's religious organization] is not currently represented in the [Chaplain Corps], but is represented by Service members in the [Navy]." *Id.* Navy regulations require that "Commanders *shall provide* [religious programs] which accommodate[] the religious needs, preference, and rights of the members of their commands . . . ." SECNAVINST 1730.7D § 6.a (August 8, 2008) (emphasis added).

53.     Despite the presence of active-duty service members who could be served by a Humanist chaplain, and the Navy's own regulations requiring accommodation of the religious practices of Navy service members, the Navy has never approved a Humanist as a chaplain. No Humanist organization has been accepted by the Navy or by the Department of Defense as recognized endorser. The reason for the inconsistency between these regulations and the Navy's refusal to recognize Humanist chaplains and their endorsing organizations is that the Navy does not consider Humanism to be a religion.

54.     The Navy has refused to recognize Humanist candidates as lay leaders because it does not recognize Humanism as a religion. Navy regulations permit commanders to appoint "lay leaders" as a "temporary accommodation of specific religious requirements in an operational setting when assigned chaplains are not able to [be] provide[d]." Military Personnel Manual (" MILPERSMAN") 1730-010 § 1(2006); *see* OPNAVINST § 1730.1E § 5.i. (April 25, 2012). Lay leaders are appointed "on the basis of volunteerism, high moral character, motivation, religious interest, and certification by the appointee's religious organization." MILPERSMAN 1730-010 § 2.A.  The applicable regulations do not require that the applicant's endorsing organization be recognized as an official "ecclesiastical endorser" by the AFCB. *See id.*

55.     Chief Electronics Technician Douglas Wright volunteered to serve as the Navy's first Humanist lay leader in or about October 2013. Before Technician Wright made known that he is a Humanist, he was accepted with the group of personnel cleared to receive training as a lay leader by his command. In compliance with MILPERSMAN 1730-010, The Humanist Society submitted a certification of his ability to serve in this capacity.

56.     After Technician Wright informed the Navy chaplain responsible for conducting the lay leader training that he is a Humanist, the chaplain refused to allow him to participate in the training and stated that Humanism "does not meet the minimum standards required by the instruction."

57.     Technician Wright requested an explanation through the Navy chain of command as to which aspects of MILPERSMAN 1730-010 (or any other applicable instruction the Navy relied on) his request failed to satisfy. However, in a November 27, 2013 letter signed "by direction" by Captain M.J. Parisi on behalf of then-Chief of Chaplains Mark L. Tidd, the Navy failed to identify any particular aspect of any instruction, and stated only that "[t]he actions of your commanding officer regarding the operation of the command religious program . . . are consistent with Navy regulations and policy."

58.     On or about October 28, 2014, commanders aboard the Navy vessel USS Makin Island approved Chief Petty Officer Martin Healey as an Atheist Lay Leader. The approval was given by ship-level commanders and did not involve or require the approval of any Defendant.

59.     Even prior to Dr. Heap's application to become a Navy chaplain, the Armed Forces Chaplains Board ("AFCB") acknowledged an increasing demand for recognition among non-theist service members. Minutes of the AFCB meeting held on December 12, 2012 reflect on-going discussions concerning "the way-ahead to address requests for religious support from

non-religious groups." However, the AFCB's reference to non-theist service members as "non-religious" only confirms the AFCB's mistaken and discriminatory assumption that Humanists cannot practice religion.

60.    DoD policy requires that the Navy and other service branches record data about active duty service personnel in a centralized database. *See* DoDI 1336.05 (May 2, 2001). The DoD and Navy include active duty service members' religious affiliation among the information stored in the database. *See* Department of Defense Manual ("DoDM") 1336.05 (July 28, 2009). DoD policy requires Defendant Garfola Wright, in her capacity as Under Secretary of Defense for Personnel and Readiness, to supervise and control DoD reporting of active duty personnel data. *Id.* ¶ 3. For the past three years, Humanist groups have lobbied the DoD, Navy, and AFCB to include Humanism as a recognized religious affiliation. However, the DoD, Navy, and AFCB refuse to include Humanism in their recognized lists of religious affiliations.

61.    Public comments by Defendant Kibben and her predecessor, Rear Admiral Mark L. Tidd, reveal that belief in a god is not merely an attribute of some religious views in the Navy Chaplain Corps, but, in their view, a *prerequisite* for service as a Navy Chaplain.  Defendant Kibben has declared that the chaplaincy is "an extension of God . . . an opportunity to be the witness and the presence of God wherever you go." Christianne M. Witten, Chief of Navy Chaplains Public Affairs, *Commandant Promotes New Chaplain of the Marine Corps*, The Official Website of the United States Marines, July 28, 2014, *available athttp://navylive.dodlive.mil/ http://www.barracks.marines.mil/News.* According to Rear Admiral Tidd, "chaplains embody the reassuring presence of God[.]" Rear Adm. Mark L. Tidd, Chief of Navy Chaplains, *Your Navy Chaplain Corps*, Navy Live, (November 25, 2013), *available at http://navylive.dodlive.mil/2013/11/25/your-navy-chaplain-corps-providing-a-ministry-of-*

*presence-for-238-years/*.  Defendant Kibben and Rear Admiral Tidd's bias is echoed on the

Navy Chaplain Corps' recruitment website, which invites applicants to join in "[s]erving God,

country and those who serve." US Navy, Chaplain & Support, America's Navy,

http://www.navy.com/careers/chaplain-support.html (last accessed  October 16, 2014).

62.    The Navy's refusal to recognize Humanism as a religion extends even to

restrictions imposed by the U.S. Naval Academy on access to the Academy's Main Chapel. The

senior chaplain denied a U.S. Naval Academy graduate's request to hold a Humanist wedding

ceremony on the ground that the Main Chapel is unavailable to "non-Christian or non-religious

wedding ceremonies." *See* Brian White, *Group Seeks Humanist Wedding in Naval Academy's*

*Main Chapel*, Marine Corps Times (July 31, 2013, 5:47PM),

http://www.marinecorpstimes.com/article/20130731/NEWS/307310005/Group-seeks-humanist-

wedding-Naval-Academy-s-main-chapel (quoting Naval Academy spokesperson).

63.    Defendants' prejudiced assumption that, absent belief in a god or gods, Humanists

cannot practice religion is shared among other military service branches. The Army recently

rejected a Humanist's application to become a "distinctive faith group leader" (the Army

equivalent of a "lay leader" in the Navy) because "the request is to foster philosophy and not

religion." *See* Valeria R. Van Dress, *For Man and Country: Atheist Chaplains in the U.S. Army*,

Command and General Staff College Foundation (June 13, 2014),

http://www.cgscfoundation.org/wp-content/uploads/2014/06/VanDress-ForManandCountry-

AtheistChaplainsintheUSArmy.pdf (unpublished Master of Military Art and Science, U.S. Army

Command and General Staff College) (quoting internal U.S. Army Installation Management

Command memorandum). Indeed, a recent study of the Department of Defense's and Army's

policies toward Humanists concluded that "[t]he [Department of Defense] and the Army Chaplaincy do not recognize Humanism as religious[.]" *Id.* at 8.

64.    Accepting Humanist chaplains and their endorsing organizations would significantly advance the Navy's stated policies for chaplain recruitment. The Navy and AFCB do not identify any non-religious justification for refusing to recognize Humanist chaplains. The Navy and AFCB's refusal to accept Humanist chaplains and lay leaders is based on nothing more than their flawed and prejudicial assumption that Humanism is not a religion.

## IV.    THE NAVY DENIES JASON DANIEL HEAP'S APPLICATION TO BECOME A CHAPLAIN BECAUSE HE IS A HUMANIST

### A.    <u>The Navy Encourages Dr. Heap to Become a Chaplain Before Learning of His Humanist Beliefs</u>

65.    Dr. Heap contacted Chaplains Program Officer and Navy Chaplain Lt. Joel DeGraeve in February 2013 to inquire about becoming a chaplain. After reviewing Dr. Heap's credentials, Lt. DeGraeve told Dr. Heap that Dr. Heap's academic record and international experience make him a highly qualified candidate for a Navy chaplaincy. Lt. DeGraeve encouraged Dr. Heap to apply.

66.    Department of Defense Instruction ("DoDI") 1304.28 requires that an applicant for a Navy chaplaincy receive the endorsement of a religious organization. DoDI 1304.28 ¶ 6. Dr. Heap made it clear to Lt. DeGraeve in their initial discussions that he did not know which religious organization would provide him the endorsement. Lt. DeGraeve told Dr. Heap that his own endorser, the Evangelical Christian Alliance (the "Alliance") would endorse Dr. Heap. Lt. DeGraeve offered to speak with members of the Alliance's endorser board with whom he had connections on Dr. Heap's behalf.

67.    At Lt. DeGraeve's suggestion, Dr. Heap began to apply for an endorsement from the Alliance, but concluded that the Alliance did not accurately reflect his religious views. Dr.

Heap then requested an endorsement from The Humanist Society, an Internal Revenue Code § 501(c)(3) organization qualified as a church under Internal Revenue Code § 170(b)(1)(A)(i).

68.     In his application to the Humanist Society, Dr. Heap explained that he sought The Humanist Society's endorsement because of his "practical and professional experience in working with people of varying beliefs—including Humanism, which is now the direction and foundation of my own personal beliefs. My travels around the world have given me insight into the need for interfaith religious dialogue, and I would hope that this would be beneficial to an organization such as the U.S. Military."

69.     Prior to his consultations with Lt. DeGraeve, Dr. Heap held legal resident status in the United Kingdom. Lt. DeGraeve told Dr. Heap to allow his United Kingdom residency status to expire in order to improve his chances of success as a chaplaincy candidate. Lt. DeGraeve told Dr. Heap that DeGraeve was concerned that more senior officials within the Navy's hierarchy would confuse "legal residency" with "dual citizenship," which would constitute grounds for denying Dr. Heap's application. Dr. Heap followed Lt. DeGraeve's advice and allowed his U.K. residency to lapse, with the severe immigration and employment ramifications that Dr. Heap may only enter the U.K. as a "visitor" and no longer has access to benefits such as employment insurance or health care under the U.K. National Health Service.

70.     At the request of Navy recruiter Lt. Mark Howell, Dr. Heap collected documents, including a Certificate of his license to serve as a Minister from the First Baptist Church in LaGrange, Texas, and sent them to Lt. Howell in support of his application.

71.     In June 2013, Dr. Heap was serving as Director of Studies at an English language academy in China. Following additional suggestions from Lt. DeGraeve, Dr. Heap traveled at his own expense from China to Philadelphia, Pennsylvania in order to continue the chaplaincy

application process. Dr. Heap paid out of his own pocket for private medical examinations and passed medical exams required by DODI 1304.28.

72.     While in Philadelphia, Dr. Heap interviewed with U.S. Marine Chaplain (Lt. Commander, Retired) Rabbi Reuben Israel Abraham. Rabbi Abraham gave Dr. Heap a perfect ranking in his assessment of Dr. Heap's qualifications to serve as chaplain.

73.     Dr. Heap then travelled at his own expense to meet Lt. DeGraeve in Harrisburg, Pennsylvania. Lt. DeGraeve again told Dr. Heap that Dr. Heap was highly qualified to serve as a Navy chaplain. Lt. DeGraeve told Dr. Heap that he would attempt to "fast-track" Dr. Heap's application so that Dr. Heap could appear before a Chaplain Appointment and Retention Eligibility Board ("CARE Board") the following month, in July 2013, or August 2013 at the latest.

74.     As of June 2013, Dr. Heap had submitted all paperwork required by the DoD and U.S. Navy to support his application, except for the paperwork identifying his endorsing religious organization. *See* DoDI ¶ 1304.28 6.1.1.1-2. Dr. Heap also submitted a Form SF 86 security clearance application. In June, when Lt. DeGraeve offered Dr. Heap the opportunity to "fast-track" his appearance before a July 2013 CARE Board, and Rabbi Abraham gave Dr. Heap a perfect ranking of his qualifications to serve as chaplain, neither they nor the Navy was aware that Dr. Heap would be endorsed by The Humanist Society.

### B.     The Navy and AFCB Discover Dr. Heap's Humanist Beliefs and Reject His Application Because He Is a Humanist

75.     The Navy and Armed Forces Chaplains Board learned that Dr. Heap is a Humanist for the first time on July 3, 2013, when the AFCB received Dr. Heap's administrative paperwork identifying The Humanist Society as Dr. Heap's endorsing organization.

76.    After the Navy learned that The Humanist Society would act as Dr. Heap's endorsing organization, the Navy's treatment of Dr. Heap's application changed radically. Lt. DeGraeve contacted Dr. Heap in late July 2013 and told him that being endorsed by The Humanist Society rather than the Evangelical Christian Alliance could pose a problem for his application.

77.    Despite Lt. DeGraeve's offer to expedite Dr. Heap's application and appearance before the July 2013 CARE Board, the processing of Dr. Heap's application stalled after the Navy became aware that Dr. Heap is a Humanist.

78.    Soon after Dr. Heap's application to the Navy, political pressure mounted on the Department of Defense to deny his application. Twenty-one members of Congress submitted a letter to Secretary of Defense Chuck Hagel, with copies to Secretary of the Navy Ray Mabus and Chief of Navy Chaplains Rear Admiral Mark L. Tidd, "to express [their] concern that the Department of Defense . . . is processing applications for a humanist endorsing agent and humanist chaplain," specifically referencing "Jason Heap's application to the Navy to serve as a humanist chaplain." The American Center for Law and Justice submitted a similar letter to Secretary Hagel describing Dr. Heap as "non-religious" and opposing his candidacy. Representative John Fleming (R-La.) introduced legislation in the U.S. House of Representatives to prevent the Department of Defense from accepting Humanist chaplains, claiming that "[t]he notion of an atheist chaplain is nonsensical; it's an oxymoron[.]" FoxNews.Com, *Religious Scholar Who Doesn't Believe in God Wants to Become Navy Chaplain* (July 30, 2013).

79.    Controversy erupted in the media, with media outlets reporting in both television and print that an "atheist" had applied to become a chaplain.

80.     Dr. Heap wrote to Lt. Howell on July 12, 2013, telling him that "I am now very worried that assembling the documentation for my application is taking so long, especially since it has been 3 weeks since I interviewed with Rabbi Abraham and almost 2 weeks since I sent [other application documents.] Could you please reassure me that my kit will be completed and forwarded by the end of today/Friday, in order for me to appear before the next [CARE Board] meeting[?]"

81.     Around the same time, a representative of The Humanist Society contacted Navy Chief of Chaplains Tidd and offered to discuss Dr. Heap's application. Rear Admiral Tidd responded through a subordinate that "[w]hile I understand your desire to discuss your organization and to incorporate humanists into the Navy Chaplain Corps," the Rear Admiral "respectfully declines" The Humanist Society's meeting request. Subsequent attempts by The Humanist Society to meet with Navy recruitment personnel and discuss Dr. Heap's candidacy were met with similar rejections.

82.     The Humanist Society contacted U.S. Air Force Colonel Jerry Pitts, the Executive Director of the Armed Forces Chaplains Board ("AFCB") in early September 2013, seeking any information on the status of Dr. Heap's application. Col. Pitts acknowledged that the Humanist Society's administrative filing in support of Dr. Heap's application "is complete and has been essentially ready for two months." However, Col. Pitts claimed the AFCB had not yet received a determination from the Navy that Dr. Heap was qualified for a chaplaincy, and therefore the AFCB would not act on The Humanist Society's application to serve as Dr. Heap's endorser. Col. Pitts told The Humanist Society representative to tell Dr. Heap "to speak with his Navy recruiter regarding the status of his application package[.]"

28

83.     Dr. Heap continued trying to obtain information on the status of his application from his Navy recruitment officers. Lt. DeGraeve informed Dr. Heap that his application remained under "administrative review" and that he had "nothing more to pass on." A new Navy Chaplain recruiter, Father Lt. Benton Garrett, became responsible for Dr. Heap's application in March 2014, but was similarly unable or unwilling to give him any information other than that "[t]here is still no definitive timeline" for processing Dr. Heap's application. After receiving unanimous encouragement from Lt. DeGraeve and other Navy representatives up until the moment Dr. Heap's Humanist religious views became known, Dr. Heap received no meaningful update on the status of his application.

84.     After months of delay and deflection by Navy recruitment officials, The Humanist Society and legal counsel for the American Humanist Association asked the Navy for an update on the status of Dr. Heap's application. Only in response to the letter from legal counsel, on March 28, 2014, did the Navy invite Dr. Heap to appear for a CARE Board on April 8, 2014 in Washington, D.C. Given the short notice and extensive travel required, Dr. Heap agreed to appear at the May 13, 2014 CARE Board meeting. Dr. Heap appeared at a CARE Board meeting on May 13, 2014 at the Pentagon.

85.     On May 27, two weeks after Dr. Heap appeared before the CARE Board, Lt. DeGraeve contacted Dr. Heap and told him that his application had been denied. Dr. Heap requested a written denial stating reasons for the decision, and received a letter signed by Captain Diana Meehan rejecting his application. The May 27 letter stated it was sent "by direction of the Commander." The letter provided no reason for the denial of Dr. Heap's application.

## V.    JASON DANIEL HEAP AND THE HUMANIST SOCIETY EXCEED ALL NAVY AND DOD QUALIFICATIONS

86.    Jason Daniel Heap's application to become a Navy Chaplain far exceeds the standards prescribed by the Navy and DoD for acceptance into the Chaplain Corps. *See* DoDI 1304.28 (June 11, 2004); OPNAVINST 1120.9 (December 20, 2005). Indeed, according to one Christian chaplain endorser whose religious organization has been recognized by the AFCB, "[m]y group has over 100 military chaplains and Heap is as good as 99 of them." [2]

### A.    The Humanist Society, Dr. Heap's Endorsing Organization, Meets all Navy and DoD Requirements for an Endorsing Religious Organization

87.    Department of Defense and Navy instructions require a chaplain applicant to demonstrate that he or she has received the endorsement of a "qualified religious organization." DoDI 1304.28 ¶ 6.1. The applicant must demonstrate this endorsement by submitting with his application a DD Form 2088, "Statement of Ecclesiastical Endorsement." *Id.*

88.    In support of his application to serve as a U.S. Navy Chaplain, Dr. Heap received the endorsement of The Humanist Society, a § 501(c)(3) organization qualified as a church under Internal Revenue Code § 170(b)(1)(A)(i). Founded in 1939, The Humanist Society prepares Humanist Celebrants to lead ceremonial observances, including weddings and funerals, across the nation and worldwide, and aims to strengthen Humanist communities. The Humanist Society provided the Navy with its endorsement of Jason Heap and administrative documentation meeting the requirements of DODI 1304.28 on July 2, 2013.

89.    In particular, the administrative documentation submitted by The Humanist Society demonstrated that:

---

[2] Tom Carpenter, *Navy Chaplains Obstruct Religious Liberty*, The Blog (June 16, 2014, 3:04 pm), http://www.huffingtonpost.com/tom-carpenter/navy-chaplains-obstruct-r_b_5497103.html.

- The Humanist Society is a § 501(c)(3) tax-exempt organization qualified as a church under § 170(b)(1)(A) of the Internal Revenue Code;

- The Humanist Society possesses ecclesiastical authority as a Humanist church to grant and withdraw ecclesiastical endorsement;

- The Humanist Society verified in its applications that its chaplains will function in a pluralistic environment and will support the free exercise of religion by service members, their families, and all authorized persons; and

- The Humanist Society stated its agreement to adhere to "all DoD Directives, Instructions, and other guidance and with Military Department regulations and policies on the qualification and endorsement of RMPs for service as military chaplains." DODI 1304.28 ¶ E3.1.3.4.

**B.**    **Dr. Heap's Application Demonstrates His Willingness and Ability to Support the Free Exercise of Religion in a Pluralistic Religious Environment**

90.    DoD instructions require that chaplains must be "willing to function in a pluralistic environment . . . and willing to support directly and indirectly the free exercise of religion" by service members and their families. DoDI 1304.28 ¶ 6.1.2. The instructions define a "pluralistic environment" as one in which "a plurality of religious traditions exist side-by-side . . . ." DoDI 1304.28 ¶ E.2.1.8. In addition, the instructions require that the applicant have 2 years of religious ministry experience that is "compatible with the duties of the [applicant] in their respective religious organization and relevant to the settings of the military chaplaincy." *Id.* ¶ 6.1.3.

91.    Dr. Heap's application fulfilled all of these requirements. His application detailed his career in ministry, which began at the First Baptist Church in LaGrange, Texas, where he led missionary work and became a licensed minister in 1993. Dr. Heap's application demonstrated that he led weekly worship services through music and liturgy, regularly delivered sermons for the church, and led in the Memorial Supper at the First United Methodist Church in Crowley, Texas. While in Texas, Dr. Heap regularly volunteered with the interfaith chaplaincy program at Dallas/Forth Worth International Airport under the supervision of the Rev. Col. John H.

Williams (Ret. U.S. Air Force). Dr. Heap also officiated numerous weddings and funerals, one with full military honors at the National Cemetery in Dallas for a Navy veteran of World War II.

92.    Dr. Heap continued his ministry while teaching and pursuing his education outside the United States. After completing his degree at The University of Oxford and Sheffield Hallam University in the United Kingdom, Dr. Heap taught religious education, philosophy, and ethics classes in the United Kingdom and led Easter and Christmas services for the Matthew Humberstone Church of England School. As Head of Religious studies at another U.K. school, Dr. Heap coordinated with local religious leaders from Sikh, Muslim, Rastafarian, and Christian communities to provide religious support for students. Dr. Heap relocated to Kuwait in 2008 to become Headteacher at Cambridge English School, where he taught Christian ethics classes to Coptic and Protestant Christians and facilitated communications with local Shi'ite and Sunni Muslim Imams. In 2010, Dr. Heap relocated to Nigeria to become Director of Studies at The Capital Science Academy in Abuja, where Dr. Heap counseled Christian and Muslim students on religious issues and assisted the school's Imam with preparation for Muslim holy events while teaching classes in Christian theology with the school's Pastor.

93.    Dr. Heap's application also demonstrated that in the course of his ministerial work, he has officiated at weddings and funerals, performed baptisms, led hospital visitations, counseling sessions, and Bible studies classes, and has performed Communion services on more than forty separate occasions.

94.    In total, Dr. Heap's application presented eight years of work ministering to people of all faiths and backgrounds in community, academic, and traditional ministry settings.

95.     The ministry experience presented by Dr. Heap's application satisfied all religious ministry requirements imposed by DoDI 1304.28 and all applicable requirements for a Navy chaplain.

### C.      Dr. Heap Is Educationally Qualified to Serve as a Chaplain

96.     DoD directives require chaplains to be "educationally qualified," meaning that they have received a bachelor's degree and post-bachelor's degree of more than 72 credit hours "in the field of theological or related studies." DoDI 1304.28  ¶ 6.1.4.

97.     Dr. Heap's application included his educational background, which includes a Bachelor of Arts, double majoring in Philosophy and Practical Theology (GPA 3.16), from Howard Payne University in Brownwood, Texas; a Master of Divinity in Counselling and Religion from Brite Divinity School—Texas Christian University (GPA 3.173); and a Master of Studies from The University of Oxford in Ecclesiastical History, awarded by the Faculty of Theology.

98.     Dr. Heap also successfully completed a Post-Graduate Certificate in Education with a teacher's specialization in teaching Religious Education to students aged eleven to eighteen from Sheffield Hallam University. The Post-Graduate Certificate prepared him to work as a Teacher of Religious Education in the U.K.'s school system. Dr. Heap's resume also noted that he was completing his Ed.D. in Administrator Leadership for Teaching and Learning in an online program through Walden University in Minneapolis, Minnesota, in which he held a GPA of 4.0, and his membership in three academic honors societies.

99.     Dr. Heap's educational qualifications presented in his application satisfied DoDI 1304.28 and all applicable educational requirements for a Navy chaplain.

### D.    Dr. Heap's Application Satisfies All Remaining Requirements

100.    DoD and Navy directives also require chaplains to meet prescribed physical standards, affirm they will abide by all applicable laws and instructions of the DoD and the Navy, be able to complete 20 years of active service by age 68, and be of good moral character and unquestioned loyalty to the United States. *See* DoDI 1304.28 ¶ 6.4; OPNAVINST 1120.9 ¶¶ 1-4.

101.    Dr. Heap's application presented that he was capable of completing all required physical standards, including swimming, running, and weight-lifting ability. At the time of his application, Dr. Heap was 37 years old, and therefore able to complete 20 years of active service by age 60. Dr. Heap's application further reflected that he had no police record, no history of drug abuse or activity, and no history of financial mismanagement such as bankruptcy or delinquency on debt.

102.    Dr. Heap has long felt, and continues to feel, a strong calling to serve as a military chaplain. He began planning for a career in the chaplaincy during his time at Brite Divinity School. An opportunity to study at Oxford temporarily suspended these plans, but returning to the U.S. and joining the military as a chaplain has remained one of Dr. Heap's lifelong ambitions.

### E.    The Navy Accepted Less Qualified Candidates Who Were Not Humanists

103.    In the two months following its denial of Dr. Heap's application, the Navy accepted at least two non-Humanist candidates who were, under the Navy's own criteria, less qualified.

104.    On June 11, 2014, the Navy accepted a candidate ("Candidate A") who was less qualified than Dr. Heap according to the Navy's criteria. Candidate A had a Bachelor of Social Work from Saginaw Valley State University (GPA 3.0695), a Master of Arts from Denver

Seminary (GPA 2.78), and no other post-baccalaureate education. Candidate A's educational qualifications measured by his GPA and degrees awarded were inferior to Dr. Heap's.

105.    Candidate A's DD Form 2088 indicated 4 years of ministry experience. Candidate A's DD Form 2088 demonstrated no more ministry experience than Dr. Heap's DD Form 2088.

106.    Neither Candidate A's DD Form 2088 nor the letter from his endorsing organization discusses his willingness to serve in pluralistic environments. Dr. Heap's DD Form 2088 discusses his extensive experience serving in pluralistic environments, including international professional experience and experience ministering in schools, hospitals, and churches, including Baptist and Methodist churches. Dr. Heap's application presented more experience of serving in pluralistic environments than Candidate A's application.

107.    Under the Navy's criteria, Candidate A was less qualified than Dr. Heap. The Navy accepted Candidate A, and rejected Dr. Heap because Dr. Heap is a Humanist and Candidate A is not.

108.    On July 23, 2014, the Navy accepted another candidate ("Candidate B") who was also less qualified than Dr. Heap. Candidate B had a Bachelor of Arts (GPA 2.72) and a Master of Divinity (GPA 2.88), both from Bob Jones University. Candidate B had no other post-baccalaureate education. Candidate B's educational qualifications measured in terms of his GPA and degrees awarded were inferior to Dr. Heap's.

109.    Candidate B's DD Form 2088 indicated only 2 years of ministry experience. Candidate B's application demonstrated less ministry experience than Dr. Heap.

110.    Candidate B's DD Form 2088 indicated that he had "broad pastoral experience including preaching, teaching, counseling, religious education, as well as sacramental and administrative experience in two different churches," and that he had "served in the Navy

Reserves Chaplain Candidate Program." Candidate B's application demonstrated no greater ability to serve in a pluralistic environment than Dr. Heap's.

111.    Under the Navy's criteria, Candidate B was less qualified than Dr. Heap.

112.    The Navy accepted Candidate B and rejected Dr. Heap because Dr. Heap is a Humanist and Candidate B is not.

## VI.    THE HUMANISM PRACTICED BY JASON DANIEL HEAP AND THE HUMANIST SOCIETY CONSTITUTES RELIGION

113.    The Humanism practiced by Jason Daniel Heap and The Humanist Society constitutes religion within the meaning of the Religious Freedom Restoration Act and the United States Constitution.

### A.    Humanism Addresses Fundamental and Ultimate Questions of Life

114.    Humanism, as articulated in *Humanism and its Aspirations*, addresses fundamental questions undertaken by traditionally recognized religions. According to one authoritative Humanist publication endorsed by The Humanist Society, Humanism "shares much with the philosophies and religions of the East as well as of the West." Lloyd & Mary Morain, *Humanism as the Next Step*, ch. 1 (American Humanist Association, 2007).

115.    Humanism takes a definitive position on the relationship between nature and mankind. Humanism posits that "Humans are an integral part of nature, the result of unguided evolutionary change." Manifesto III. It "recognize[s] nature as self-existing" rather than as serving human ends or coordinated by a single intelligence and "accept[s] our life as all and enough" without relying upon the promise of reward or punishment in an afterlife. *Id.*

116.    Humanism also seeks to identify the source of human knowledge. It propounds that "[k]nowledge of the world is derived by observation, experimentation, and rational analysis," and contends that "science is the best method for determining this knowledge." *Id.*

117.     Humanism identifies a system of rules for ethical conduct. It argues that "[e]thical values are derived from human need and interest as tested by experience." *Id.* These ethical values include an overriding interest in preserving "human welfare shaped by human circumstances, interests, and concerns and extended to the global ecosystem and beyond." *Id.*

118.     Like many traditions recognized as religious in mainstream American culture, Humanism emphasizes the inherent value of human life as a central imperative. Humanism recognizes "each person as having inherent worth and dignity . . . ." Manifesto III. In honor and recognition of the inherent dignity of all persons, Humanists undertake a fundamental commitment "to minimize the inequities of circumstance and inability . . . so that as many as possible can enjoy a good life." *Id.*

119.     In addition, Humanism takes a position on the source of human satisfaction. It asserts that "[h]umans are social by nature and find meaning in relationships." Human satisfaction therefore derives in part from the "joining of individuality with interdependence" among autonomous individuals. *Id.* Humanism also "rel[ies] on the rich heritage of human culture," rather than supernatural inspiration, to provide direction and fulfillment. *Id.*

120.     As explained by Unitarian Minister and Humanist John H. Dietrich,

> [H]umanism thinks of religion as something very different and far deeper than any belief in God. To it, religion is not the attempt to establish right relations with a supernatural being, but rather the upreaching and aspiring impulse in a human life. It is life striving for its completest fulfillment, and anything which contributes to this fulfillment is religious, whether it be associated with the idea of a God or not.

Morain, *supra* § VI.111.A.

121.    For Humanists such as Jason Heap and The Humanist Society, this commitment to celebration and improvement of human life fulfills a role equivalent to belief in divinity in conventional religion.

122.    Dr. Heap and The Humanist Society adhere to the values and fundamental principles advocated by Humanism sincerely and with the strength of traditional religious views.

**B.    Humanism is a Comprehensive Worldview as Opposed to an Isolated Teaching**

123.    Humanism offers a comprehensive system of ethical and moral principles as opposed to an isolated teaching. As attempts to state systematically a set of interrelated and mutually reinforcing beliefs, *Humanism and its Aspirations* and *Humanism as the Next Step*, both publications endorsed by The Humanist Society, demonstrate that Humanism is a comprehensive worldview.

124.    The Humanism practiced by Jason Daniel Heap and The Humanist Society incorporates principles of religious traditions that are themselves comprehensive belief systems. Ethical Culture, Unitarianism, and Universalism are closely related to and inform the Humanism practiced by Plaintiffs. Plaintiffs' Humanism merges these religious traditions with eighteenth century enlightenment rationalism and nineteenth century "freethought" that do not describe themselves as religious but nevertheless constitute systematically presented principles and beliefs.

**C.    Humanism Exhibits the Hallmarks and External Signs of Religion**

125.    Humanism includes customs and practices that occupy a parallel position in Humanist thought to rituals performed in other religious traditions.

38

### 1.    Ceremony

126.    The Humanist Society prepares Humanist Celebrants to lead ceremonial observances including weddings and memorial services, give invocations, and lead celebrations and commemorative events in accordance with Humanist thought and teaching. As a Celebrant, Dr. Heap is accredited by The Humanist Society to perform these ceremonies.

127.    Humanists conduct regular meetings in forums including Ethical Culture societies, Sunday Assemblies, and Free Thought Churches, among others. For example, the Northern Virginia Ethical Society is a humanist congregation that conducts a Sunday School and regular Sunday meetings and "promotes ethical growth and learning, builds and sustains community and implements ethical action . . . ." Northern Virginia Ethical Society, *www.noves.org* (accessed September 12, 2014).  Similarly, The Fellowship of Humanity in Oakland, California, is a Humanist Church that conducts Sunday meetings involving a group reading and singing of songs, meditation, and a collection.

128.    Humanist meetings sometimes may involve discussions of Humanist thought and ideas, and at other times may involve community service projects that give Humanists the opportunity to practice their belief that "[w]orking to benefit society maximizes individual happiness" and commitment to "minimize the inequities of circumstances and ability . . . so that as many as possible can enjoy a good life." Manifesto III, *supra* § II.38.

### 2.    Holidays

129.    Many Humanists also observe annual holidays that provide opportunities to observe and practice their beliefs. "HumanLight" and "World Humanist Day" are Humanist holidays that are observed on December 23 and June 21 of each year, respectively, as celebrations of Humanist values.  Many Humanists also celebrate other holidays including Freethought Day, a holiday that celebrates individual identity and personhood, and National Day

of Reason, which is devoted to celebrating rational thinking and freedom from government intrusion into religious matters.

3.     Recognized Ministry and Organizational Structure

130.   The Humanist Society endorses Humanist Celebrants to become advocates, leaders, and scholars of Humanism. Celebrants perform functions equivalent to the roles of ministers and clergy in other religious traditions.

131.   Each level of Celebrant endorsement is associated with completing prescribed courses and areas of study. The Humanist Society provides an accredited program of training and free online education through the Kocchar Online Humanist Education website, and a related Certificate Program providing in-person training through The Humanist Institute.

132.   The Associate Humanist Celebrant credential is an introductory credential that confers the rights equivalent to ordained clergy, including wedding solemnization.

133.   The Humanist Celebrant credential is The Humanist Society's endorsement to serve as a congregational leader to Humanist congregations, officiant at all Humanist ceremonies, and scholar of Humanism. The credential requires the Celebrant to renew his or her credential bi-annually by submitting an application for approval to The Humanist Society.

134.   A Senior Humanist Celebrant is intended to act as a mentor and teacher to other Humanist Celebrants. Humanist Celebrants may apply to become Senior Celebrants on the date of their first bi-annual re-endorsement. To qualify for the position, a candidate must have two years in good standing as a Humanist Celebrant. To maintain the credential, a Senior Celebrant must conduct at least one ceremony and have four hours of Humanism-related formal education per year.

135.   The Humanist Celebrant Leader designation is provided to Celebrants who have successfully taken on an organizational leadership role as a Humanist. The Humanist Society

40

encourages local Humanist congregations to make qualification as a Celebrant Leader a requirement for leaders within their organizations. To qualify, an applicant must be endorsed as a Senior Humanist Celebrant, obtain reference from an organization in which the applicant is a leader, and complete an application with three references, among other requirements. To maintain the credential, a Celebrant Leader must maintain standing as a Senior Celebrant, maintain a leadership position within his or her organization, complete four hours annually of formal group leadership training, and file a bi-annual re-endorsement application, among other requirements.

136.     Recognition as a Humanist Celebrant Emeritus is awarded to retired Humanist Celebrants in recognition of their years of service and status as an exemplary Celebrant. Like other Celebrants, the title of Humanist Celebrant Emeritus carries full credentials and benefits equivalent to ordained clergy.

137.     The Humanist Society also provides the endorsement of Humanist Lay Leader. This positon is equivalent to the role of "Deacon" in some churches. It is also available for military personnel desiring to organize humanist meetings within chaplain services in accordance with various military regulations.

138.     Humanist Celebrants are permitted to perform marriages under state statutory provisions that apply to religious ministers or clergy in virtually all of the fifty States and the District of Columbia. By granting Humanist Celebrants permission to solemnize marriages under these statutory provisions, these States recognize Celebrants as a form of minister or clergy.

139.     By granting Humanist Celebrants authority to solemnize marriages under theses statutory provisions, these States recognize Celebrants as a form of minister or clergy.

140.    As a Celebrant endorsed by The Humanist Society, Dr. Heap may perform marriages in all fifty states and the District of Columbia.

4.    Important Writings

141.    The Humanist Society endorses several writings as authoritative statements of Humanism.

142.    *Humanism and its Aspirations* articulates a consensus among modern Humanists as to what they believe. It was adopted in 2003 and is the third revision of the Humanist Manifesto.

143.    The Humanist Manifesto was first adopted in 1933, and was again revised in 1973. Like *Humanism and its Aspirations*, the original and revised versions of the Manifesto set forth a consensus view of beliefs espoused by contemporary Humanists.

144.    *Humanism as the Next Step* is another contemporary expression of the beliefs of modern Humanism. *See* Morain, *supra* § VI.111.A. Like *Humanism and its Aspirations*, *Humanism as the Next Step* is also endorsed by The Humanist Society as a contemporary expression of Humanist beliefs.

5.    Propagation of Beliefs

145.    Humanists disseminate their beliefs through numerous print and on-line media. The Humanist Press publishes both print and electronic books that reflect Humanist thought. The Humanist is an online and print magazine published by The Humanist Society. Humanists also routinely use on-line social media to disseminate ideas and coordinate Humanist meetings.

146.    Humanists bear witness to their commitment "to minimize the inequities of circumstances and inability" and belief that "[w]orking to benefit society maximizes individual happiness" by engaging in community service projects and trips. Manifesto III. Humanist

congregations often partner with congregations from conventionally recognized religious organizations to perform these community services.

## VII.   DISCRIMINATION AGAINST HUMANIST CHAPLAIN APPLICANTS AND THEIR ENDORSING AGENCIES SERVES NO RATIONAL GOVERNMENTAL PURPOSE

147.    Excluding Dr. Heap from the chaplaincy because he is a Humanist serves no rational governmental purpose and, indeed, contradicts the stated goals and purposes of the Navy chaplaincy.

148.    According to the Navy's "Professional Standards for [Professional Naval Chaplaincy]," the Navy Chaplain Corps is "equally accommodating of all religions and expressive of none in particular. It is the policy of the [Chaplain Corps] to be equally tolerant of every Service member, family member, and other authorized persons irrespective of that individual's religious beliefs or unbeliefs." SECNAVINST 5351.1, Encl. 2 ¶ 2 (emphasis added). Official policy governing the Navy chaplaincy claims that "[m]embers of the [Department of Defense] community represent a plurality of backgrounds and beliefs. [Professional Naval Chaplaincy] recognizes and values the pluralism inherent in the DoD community and seeks to accommodate the religious beliefs of all to the fullest possible extent." *Id.* Encl. 2 ¶ 5.

149.    The Navy claims to recruit "from a wide variety of sources in furtherance of maintaining a diverse corps made up of the best and most fully qualified chaplains." *Id.* ¶ 5(a). "Consideration is given" in recruitment "to religious diversity, particularly where an [applicant's religious organization] is not currently represented in the [Chaplain Corps], but is represented by Service members in the [Navy]." *Id.* Navy regulations purport to require that "Commanders *shall provide* [religious programming] which accommodates the religious needs, preferences, and rights of the members of their commands . . . ." SECNAVINST 1730.7D § 6.a (emphasis added). Related regulations prescribe that Chaplains are primarily responsible for providing religious

programming to service members. *See* OPNAVINST 1730.1E ¶¶ 4.c.(1)-(3) (requiring commanders to appoint a chaplain "to lead and supervise" religious programs).

150.    Excluding Dr. Heap from the Chaplain Corps and The Humanist Society from the Department of Defense's approved list of ecclesiastical endorsing agencies contradicts these policies professing the Navy's tolerance and inclusion of a plurality of religious backgrounds. Humanists serve in the Navy, Coast Guard, and Marines, yet there is *no* Humanist chaplain in any of the Armed Services.  Humanist chaplains also would be better equipped to serve service members who have no religious preference and make up approximately 30% of the military according to DoD statistics. *Supra* pt. III.B. The Navy's denial of Dr. Heap's application and refusal to recognize The Humanist Society as a qualified endorsing organization contradicts the Navy's regulations requiring its commanders to accommodate the religious needs of their subordinates. As the Navy also refuses to recognize Humanist lay leaders, it cannot claim to be meeting these religious needs through some means other than the chaplaincy.

151.    Refusing to admit a Humanist into the Navy Chaplain Corps or recognize The Humanist Society as a qualified endorser of chaplains undermines morale and military unit cohesion by denying Humanist service members access to chaplains who share, or at least understand, their beliefs. As one Humanist veteran of the Vietnam War describes his experiences,

> I knew that proclaiming to be an atheist while on duty in South Vietnam could likely prejudice promotions and possibly cause harmful reprisals. An atheist was perceived as tantamount to being a communist. Our army chaplain was a fundamentalist Christian who saw the devil in virtually everything he didn't believe in. Army chaplains wielded a lot of power; their opinions could make the difference between whether or not you got promoted. So, I was quiet about my nonbelief in God.
>
> Philip K. Paulson, *I Was an Atheist in a Foxhole*, American Humanist Ass'n (1989), http://americanhumanist.org/humanism/I_Was_an_Atheist_in_a_Foxhole.

152.    The Navy also requires Chaplains to "be willing to function in the diverse and pluralistic environment of the military, with tolerance for diverse religious traditions and respect for the rights of individuals to determine their own religious convictions." SECNAVINST 1730.7D (2008) ¶ 5.d.e.2. "Chaplains must be willing to support the free exercise of religion by all Service members, their families, and other authorized persons." *Id.* Excluding Dr. Heap from the Chaplain Corps and the Humanist Society from the Navy's approved list of ecclesiastical endorsing agencies contradicts these policies as well, because Dr. Heap's and The Humanist Society's Humanist principles *emphasize* tolerance and respect for differing religious traditions.

153.    As a certified Humanist Celebrant, Dr. Heap is qualified to organize and lead Humanist ceremonies. Dr. Heap has served as minister for Christian churches in Texas, and counseled students on the practice of other religious traditions as a teacher and coordinator of religious studies. Dr. Heap's professional background demonstrates his willingness and ability to support and encourage a wide variety of religious traditions. *See supra* V.B.

154.    That Dr. Heap does not believe in a god or gods does not prevent him from ministering to Navy service members who do. Like other Humanists, Dr. Heap is committed to protecting religious freedom and observance as part of his commitment "to diversity[] and [to] respect those of differing yet humane views." Manifesto III.

155.    Existing Navy chaplain recruitment policy fully recognizes that Christian service members can be served by a Jewish chaplain who does not believe in the divinity of Jesus Christ, that Muslim sailors can be served by Christian chaplains who do not believe that Muhammad is a prophet of God, and that monotheist Jewish sailors or marines can be served by a polytheist Hindu chaplain.

156.    The Armed Forces Chaplains Board has recognized the Buddhist Churches of America, which practices Shin Buddhism, as a qualified ecclesiastical endorsing agent.

157.    The Navy has commissioned at least one Shin Buddhist chaplain.

158.    Like Humanism, Shin Buddhism does not teach or profess belief in a personal or centralized god.

159.    The AFCB also has recognized a Hindu organization that espouses a belief in more than one god as a qualified religious endorser.

160.    The AFCB also recognizes The Unitarian Universalist Association as a qualified endorser of military chaplains.

161.    Humanist chaplains serve in the militaries of Belgium and the Netherlands. Thirty-eight out of a total one-hundred fifty chaplains in the Dutch military are Humanists.

162.    U.S. universities also sponsor Humanist chaplains. *See, e.g.*, Humanist Community at Harvard, *Greg M. Epstein*, http://harvardhumanist.org/greg-epstein/ (accessed September 10, 2014) (Harvard University);  Alex Richard, *Stanford's New Humanist Chaplain: John Figdor*, The Stanford Review (March 10, 2013), *available at* http://stanfordreview.org/article/stanfords-new-humanist-chaplain-john-figdor/ (Stanford University); American University, Washington D.C., Kay Spiritual Life Center, *Binyamin Biber*, http://www.american.edu/ocl/kay/humanist-chaplain.cfm (American University) (accessed September 10, 2014).

163.    As Humanist chaplains in U.S. academic institutions and in the Dutch and Belgian militaries are capable of ministering to students and service members who believe in a god or gods, there is no rational reason why Dr. Heap and The Humanist Society's Humanist convictions would prevent them from ministering to U.S. Navy service members of all faiths.

164.    The Forum on the Military Chaplaincy ("the Forum") has published a public statement in support of allowing Humanists to serve as military chaplains. As of August 2014, the statement had been signed by over 120 representatives of different faiths and denominations, including Christianity and Judaism. *See* The Forum on the Military Chaplaincy, *Humanist Chaplain Support Statement of Principle* (August 2014), *available at* http://forumonthemilitarychaplaincy.org/wp-content/uploads/2013/08/statement-of-principle-signed.pdf.

165.    The Forum's signed public statement demonstrates that adherents of theistic religions do not perceive Humanists' non-theist beliefs as disqualifying them from the chaplaincy or preventing them from fulfilling their duties to service members who believe in a god or gods.

166.    The Navy does not require any correlation between the identity or number of gods believed in by a particular chaplain and the population of service members to whom he or she ministers.

167.    Humanists' disbelief in the existence of a god or gods does not supply a rational basis for excluding them or their endorsing organizations from the Navy chaplaincy.

168.    Denying Jason Daniel Heap a chaplaincy because he is a Humanist, and denying The Humanist Society status as an approved endorsing agency because of its Humanist convictions, undermines the constitutional foundations of the military chaplaincy itself. As recognized in *Katcoff v. Marsh*, the military chaplaincy's ability to survive scrutiny under the Establishment Clause depends upon its inclusiveness of all religious persuasions. *See* 755 F.2d at 231 ("The Army chaplaincy does not seek to 'establish' a religion" because "[i]t observes the basic prohibition expressed by the Court in *Zorach v. Clauson* 343 U.S. 306, 314 (1952) [that]

47

'the government must be neutral when it comes to competition between sects.'" (internal citations omitted)). Permitting the Navy to pursue a policy of excluding chaplain applicants because of their religious persuasion would compromise this predicate for the chaplaincy's constitutionality.

## VIII.  DR. HEAP EXHAUSTS AVAILABLE ADMINISTRATIVE REMEDIES

169.    The Navy notified Dr. Heap of its decision to reject his application to serve as a chaplain on May 27, 2014.

### A.    Dr. Heap Exhausts Title VII Remedies and is Informed by the Navy EEO That Title VII "Does Not Apply"

170.    On June 10, 2014, Plaintiff Heap, through counsel, contacted the Navy Office of EEO and Diversity Management ("Navy EEO"), seeking to initiate the pre-complaint counseling procedure for claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII"). *See* 29 C.F.R. § 1614.105.

171.    The Navy EEO conducted its final interview with Dr. Heap on July 16, 2014 and issued a "Notice of Further Rights" to Dr. Heap. The "Notice of Further Rights" stated that Dr. Heap had until August 1, 2014, to file a formal complaint of discrimination.

172.    Dr. Heap filed a formal complaint of discrimination on July 31, 2014. Dr. Heap's formal complaint of discrimination "challenge[d] the Navy's rejection of" Dr. Heap's application "because of [his] religious beliefs."

173.    On September 3, 2014, Dr. Heap received a Notice of Dismissal of Formal Complaint from the Chief of Naval Personnel. The Notice of Dismissal stated that "[t]hough 29 C.F.R. § 1614 applies to military departments including Department of Navy, it does not apply to uniformed members of the military departments. As the EEOC has no enforcement power or jurisdiction over appointments to uniformed positions of the military departments, your issue

fails to state a claim for which there is a remedy under the EEOC." The Notice of Dismissal

further stated that "you may file a civil action in an appropriate U.S. District Court within 90

calendar days of your receipt of this decision. Filing a civil action will result in termination of the

administrative processing of your complaint."

174.    As Dr. Heap received the Notice of Dismissal on September 3, 2014, his

Complaint had to be filed no later than December 2, 2014 to allege a claim under Title VII.

175.    The Navy chaplaincy is a uniformed military position.

176.    Title VII does not apply to uniformed service members or to applicants to serve in

a uniformed military position.

**B.    Because Dr. Heap Never Became a Member of the U.S. Navy, the Navy's
        Records Correction Procedures Do Not Apply**

177.    The procedures described at 10 U.S.C. § 1558 apply *only* to actions seeking to

correct military records. *See* 10 U.S.C. § 1558(a).  Dr. Heap does not seek correction of an error

in any military record.

178.    Dr. Heap does not have any military records covered by 10 U.S.C. § 1558.

179.    The Navy has not established any procedure for correction of military records for

individuals who never became service members or employees of the Navy. The Board for

Correction of Naval Records ("BCNR") has jurisdiction to determine "the existence of error or

injustice in the naval records *of current and former members of the Navy and Marine Corps.*" 32

C.F.R. 723.2 (emphasis added). It has no jurisdiction over any military records maintained by the

Navy for persons who never became Navy service members or employees.

180.    A person seeking to correct an error in his military records must submit an

application to the BCNR on Form DD 149. 32 C.F.R. 723.3(a). Form DD 149 requires the

applicant to present information that is inapplicable to individuals who never became service

members or employees of the Navy, such as listing the person's Branch of Service, Service

Number, Pay Grade, Date of Discharge, Type of Discharge, and Present Status as either "Active

Duty, Reserve, National Guard, Retired, Discharged, or Deceased." DD 149 has no alternative

sections that would allow a person who never became a Navy service member or employee to

present information in support of his or her application.

181.    Counsel for Dr. Heap contacted the Navy BCNR at the telephone number

provided on its website on September 19, 2014. The BCNR representative informed counsel that

the BCNR's procedures do not apply to persons who applied for a position with the Navy and

never became Navy service members or employees because such persons have no military

records.

182.    Because Dr. Heap's claim is not for correction of military records, and because

the Navy has not established any administrative procedure available to him under 10 U.S.C. §

1558, use of the Navy's record-correction procedures would be futile.

## IX.    COMPLAINT OF DISCRIMINATION

183.    The Navy Defendants discriminated against Jason Daniel Heap and The Humanist

Society as his endorsing religious organization by recommending and/or making the final

determination to deny Dr. Heap's application to serve as a Navy Chaplain because he is a

Humanist endorsed by a Humanist organization.

184.     The AFCB Defendants discriminated against The Humanist Society by

recommending and/or making the final decision not to grant The Humanist Society recognition

as a qualified ecclesiastical endorser because The Humanist Society is a Humanist organization.

185.    The Humanist Society has standing in its organizational capacity. The Humanist

Society has identified other individuals whom it intends to endorse as Humanist candidates for

the Navy chaplaincy. As a result of Defendants' discriminatory denial of Dr. Heap's application,

The Humanist Society remains subject to the more onerous requirements imposed by the Navy

on religious organizations that have not previously endorsed a successful chaplain applicant. *See*

DODI 1304.28 ¶ 6.1.1.2. Subjecting The Humanist Society to this more rigorous review process

for an endorsing organization materially impairs its organizational mission to provide Humanist

Celebrants to Humanist communities, including Humanist service members in the Navy, and

requires the Society to take steps and expend resources not required of other recognized

endorsers.

186.    The Humanist Society also has associational standing. Because of the Navy

Defendants' discriminatory denial of Dr. Heap's application, and the AFCB Defendants' refusal

to recognize The Humanist Society as a qualified endorsing organization, Humanist service

members in the Navy do not have access to a Humanist chaplain able to conduct ceremonies and

provide counseling in accordance with their Humanist convictions. The Humanist Society has

standing to sue on behalf of its members who are Navy service members in furtherance of its

organizational mission to strengthen Humanist communities and provide access to Humanist

Celebrants within the military.

187.    Dr. Heap and The Humanist Society demand a jury trial of all claims.

## COUNT ONE

### (Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.*)

188.    Plaintiffs incorporate by reference and reallege all foregoing paragraphs herein.

189.    This Count is alleged by Jason Daniel Heap and The Humanist Society against

Defendants Mabus, Moran, Hagel, Scott, Stendahl, Gard, the Navy, the Department of Defense,

and John and Jane Does # 21-30 in their official capacities, against Defendants Andrews,

Kibben, Garfola Wright, Rutherford, Bailey, Page, John and Jane Does # 1-20 in their individual

and official capacities, and against Defendants Horn, Tidd and John and Jane Does # 31-40 in their individual capacities.

190.    The Religious Freedom Restoration Act ("RFRA"), codified at 42 U.S.C. § 2000bb *et seq.*, provides that the federal government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the government demonstrates that the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering" that interest.  42 U.S.C. § 2000bb-1(a)-(b).

191.    The Navy Defendants' rejection of Dr. Heap's application to serve as a Navy chaplain substantially burdens Dr. Heap's exercise of his Humanist religion by discriminating against him on the basis of his religious exercise, belief, and affiliation.

192.    The AFCB Defendants' refusal to recognize The Humanist Society as a qualified endorser in support of Dr. Heap's application substantially burdens The Humanist Society's exercise of its Humanist convictions by discriminating against The Humanist Society on the basis of its Humanist affiliation.

193.    Defendants bear the burden to show that a government-imposed deterrent to religious exercise furthers a compelling state interest and is the least restrictive means of furthering that interest.

194.    Excluding Jason Heap and The Humanist Society from the Navy Chaplaincy and its recruitment system because they are Humanists contradicts the Navy's stated goals and policies for recruitment of Navy chaplains. Humanists are as able to serve Navy service members of disparate faiths as chaplains from other religions that the Navy and AFCB Defendants have accepted. Excluding Plaintiffs on the basis of their religious view serves no compelling interest.

195.    Excluding Plaintiffs from the chaplaincy is not the "least restrictive" means of advancing any compelling governmental interest.

## COUNT TWO

### (Establishment Clause, U.S. Const. amend. I, cl. 1)

196.    Plaintiffs incorporate by reference and reallege all foregoing paragraphs herein.

197.    This Count is alleged by Jason Daniel Heap and The Humanist Society against all Defendants other than Defendants Horn, Tidd and John and Jane Does # 31-40 in their official capacities.

198.    The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend ,. cl. 1. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). Strict scrutiny applies to governmental action that imposes a preference among religious denominations. *Id.* at 246.

199.    The Navy Defendants discriminated against Dr. Heap by denying, recommending, and/or approving the denial of Dr. Heap's application to become a Navy chaplain because of his Humanist religion.

200.    The AFCB Defendants discriminated against The Humanist Society by rejecting its application to act as Dr. Heap's endorsing religious organization because of The Humanist Society's Humanist principles.

201.    The Navy Defendants' and AFCB Defendants' rejection of Dr. Heap's and The Humanist Society's applications imposes an unconstitutional denominational preference by disqualifying applicants on the basis of their religious affiliation. It is therefore subject to strict

scrutiny, and Defendants bear the burden to prove the rejection of both is justified by a compelling interest and closely fitted to further that interest.

202.    The Navy Defendants' and AFCB Defendants' rejection of Plaintiffs' applications because of Plaintiffs' Humanist religious views also fails the three-part test articulated in *Lemon v. Kurtzman*, 403 U.S. 602 (1982). Under *Lemon*, governmental action violates the Establishment Clause if it has no secular purpose, if its "principal or primary effect . . . neither advances nor inhibits religion," or it causes "excessive government entanglement with religion." *See Lemon*, 403 U.S. at 612-13 (internal quotation marks omitted).

203.    Rejecting Plaintiffs' applications because of their Humanist religious affiliation serves no valid secular purpose. As more than 3% of military personnel identify as Humanist, and the Navy has never accepted a Humanist chaplain, the disqualification of Humanist applicants contradicts the Navy's stated policies to recruit "from a wide variety of sources in furtherance of maintaining a diverse corps made up of the best and most fully qualified chaplains,[]" and to seek to recruit applicants whose religious organization "is not currently represented in the [Chaplain Corps], but is represented by Service members in the [Navy]." *See* SECNAVINST 5351.1 ¶ 5.a.

204.    Rejecting Plaintiffs' applications because of their Humanist religious affiliation has the unconstitutional primary effect of advancing a particular view of religion that requires the existence and centrality of a god or gods, and of inhibiting the religious practices of Humanist Navy service members who are denied access to a Humanist chaplain. These effects are evidenced by the reactions of opponents of Dr. Heap's application to become a chaplain, who applauded the Navy's decision as a rejection of Dr. Heap's non-theist religious views. *See, e.g.*, Press Release, Chaplain Alliance for Religious Liberty, *Chaplains commend Navy for decision*

*on "atheist chaplain" application* (May 30, 2014), *available at* www.chaplainalliance.org ("Chaplains, historically and by definition, are people of faith. . . . You can't have an 'atheist chaplain' any more than you can have a 'tiny giant' or a 'poor millionaire.'" (quoting Ron Crews Executive Director of Chaplain Alliance for Religious Liberty)); Todd Starnes, Fox News Radio, *Navy Rejects 'Humanist' Chaplain*, *available at* http://radio.foxnews.com/toddstarnes/top-stories/navy-rejects-humanist-chaplain.html (accessed August 18, 2014) (quoting comments by U.S. Representative John Fleming that "[b]y definition, if you are a person who is not a believer in God, that automatically disqualifies you").

205.    Rejecting Plaintiffs' applications because of Plaintiffs' Humanist religious affiliation excessively entangles the Navy and AFCB in religious matters by involving them in choosing which of multiple competing traditions are sufficiently "religious" to qualify for a chaplaincy.

### COUNT THREE

### (Free Exercise Clause, U.S. Const. amend. I, cl. 2)

206.    Plaintiffs incorporate by reference and re-allege all foregoing paragraphs herein.

207.    This Count is alleged by Jason Daniel Heap and The Humanist Society against all Defendants other than Defendants Horn, Tidd and John and Jane Does # 31-40 in their official capacities.

208.    The Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I, cl. 2. The Free Exercise Clause applies to government action that discriminates among some or all religious beliefs.

209.    The Navy Defendants' and AFCB Defendants' rejection of Dr. Heap's and The Humanist Society's applications impermissibly singles out Dr. Heap and The Humanist Society for disfavored treatment because of their Humanist convictions. Discrimination against Plaintiffs because of their religious convictions is invalid unless Defendants demonstrate that it is justified by a compelling interest and is narrowly tailored to advance that interest.

### COUNT FOUR

### (Equal Protection and Substantive Due Process, U.S. Const. amend. XIV, § 1 & amend. V)

210.    Plaintiffs incorporate by reference and reallege all foregoing paragraphs herein.

211.    This Count is alleged by Jason Daniel Heap and The Humanist Society against all Defendants other than Defendants Horn, Tidd and John and Jane Does # 31-40 in their official capacities.

212.    Under the Fifth and Fourteenth Amendments to the U.S. Constitution, the federal government may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Under the Fifth Amendment, the federal government may not deprive any person of "liberty . . . without due process of law." U.S. Const. amend. V.

213.    Governmental action that discriminates between similarly situated individuals on the basis of their religion is subject to strict scrutiny under the Equal Protection Clause. In addition, because Defendants' rejection of Dr. Heap's application and refusal to recognize The Humanist Society interferes with their fundamental rights to free exercise of religion, it receives strict scrutiny under both the Equal Protection and Due Process Clauses.

214.    Plaintiff Jason Daniel Heap is similarly situated to chaplain applicants from non-Humanist religious backgrounds whose chaplaincy applications were approved by the Navy Defendants.

56

215.    Plaintiff Heap's application for the chaplaincy demonstrated that he satisfies all applicable requirements imposed by Navy and Department of Defense instructions. *See* DoDI 1304.28; OPNAVINST 1120.9; *supra* pt. IV. Nevertheless, the Navy Defendants denied Plaintiff's application because of his Humanist convictions.

216.    The Humanist Society provided documentation to the AFCB on July 2, 2013, demonstrating that it satisfies all requirements imposed by DODI 1304.28. *Supra* IV.A. Because The Humanist Society has met all of these requirements, The Humanist Society is similarly situated to religious endorsing organizations that have been approved as qualified endorsers by the AFCB Defendants. Nevertheless, the AFCB Defendants refused to recognize The Humanist as a qualified religious organization capable of endorsing chaplain applicants because of its Humanist convictions.

## COUNT FIVE

### (Religious Test Clause, U.S. Const. art. VI, ¶ 3)

217.    Plaintiffs incorporate by reference and reallege all foregoing paragraphs herein.

218.    This Count is alleged by Jason Daniel Heap and The Humanist Society against all Defendants other than Defendants Horn, Tidd and John and Jane Does # 31-40 in their official capacities.

219.    The Religious Test Clause states that "no religious test shall ever be required as a qualification of any office or public trust under the United States." U.S. Const. art. VI, ¶ 3.The Clause prohibits the federal government from conditioning receipt of any federal office or public trust on adherence to any particular religion or to religion in general or on belief in the existence of a god.

220.    By denying Jason Daniel Heap a position as a U.S. Navy chaplain and refusing to recognize The Humanist Society as a qualified religious organization because of their Humanist convictions, Defendants violated the Religious Test Clause by making belief in the existence of a god or gods a prerequisite for federal office.

221.    By denying Jason Daniel Heap a chaplaincy because the Navy does not recognize Humanism as a religion, the Defendants impose a requirement of religious affiliation as a prerequisite for public office.

222.    By denying Jason Daniel Heap a chaplaincy because the Navy does not recognize The Humanist Society as a qualified religious endorsing organization, the Defendants impose a requirement of religious affiliation as a prerequisite for public office. Accordingly, the procedure imposed in DoDI 1304.28 requiring chaplain applicants to be endorsed by a religious organization is facially invalid, because it necessarily makes religious affiliation (as manifested by the endorsement of a religious organization) an unconstitutional religious test.

## COUNT SIX

### (Subject Matter and Viewpoint Discrimination, Prior Restraint, and Freedom of Association: U.S. Const. amend. 1, cl. 3)

223.    Plaintiffs incorporate by reference and reallege all foregoing paragraphs herein.

224.    This Count is alleged by Jason Daniel Heap and The Humanist Society against all Defendants other than Defendants Horn, Tidd and John and Jane Does # 31-40 in their official capacities.

225.    Under the Free Speech Clause, Defendants may not "abrige[] the freedom of speech." U.S. Const. amend. 1, cl. 3. The Free Speech Clause prohibits Defendants from regulating and/or prohibiting Dr. Heap and The Humanist Society's speech on the basis of its content or viewpoint. The Clause also prohibits Defendants from imposing a prior restraint on

Plaintiffs' speech, and protects the rights of Dr. Heap and The Humanist Society to associate for expressive and religious purposes.

226.    By rejecting Dr. Heap's application to serve as a U.S. Navy chaplain because of his Humanist beliefs, Defendants prohibited Dr. Heap from expressing the tenets of Humanism to Navy service members because of the content and viewpoint of his speech.

227.    By refusing to recognize The Humanist Society as a qualified endorser of Navy chaplains because of its Humanist convictions, the AFCB Defendants prohibited Dr. Heap and all other chaplain candidates endorsed by The Humanist Society from speaking because of the Humanist content and viewpoint of their speech.

228.    Dr. Heap and all other chaplain applicants endorsed by The Humanist Society cannot address, minister to, or associate with Navy service members as chaplains unless the AFCB first recognizes The Humanist Society as a qualified endorser of chaplains. Approval by the AFCB thus serves as a form of licensing system for speech and expressive association. The AFCB Defendants have imposed an unconstitutional prior restraint on speech and association by Dr. Heap and all chaplain candidates endorsed by The Humanist Society by refusing to recognize Dr. Heap as a chaplain and The Humanist Society as a qualified endorser of Navy chaplains because of their Humanist convictions.

229.    By rejecting Dr. Heap's application and refusing to recognize The Humanist Society as a qualified endorsing organization, Defendants have unconstitutionally abridged the associational rights of Dr. Heap and Navy service members who would otherwise have congregated for expressive and religious purposes with Dr. Heap as a Humanist chaplain. Defendants have similarly abridged the associational rights of other chaplains endorsed by The Humanist Society and the Navy service members who would have congregated with them.

## COUNT SEVEN

### *(Bivens v. Six Unnkown Named Agents of the Federal Bureau of Narcotics)*

230.    Plaintiffs incorporate by reference and reallege all foregoing paragraphs herein.

231.    Dr. Heap alleges the constitutional violations in Counts II-VI against Defendants Andrews, Tidd, Kibben, and John and Jane Does #1-20 who reside in this district in their individual capacities pursuant to *Bivens v. Six Unnkown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Department of Defense and Navy regulations provided each of these Defendants with authority and responsibility to make a final decision and/or recommendation as to whether to accept or reject Plaintiff Heap as a U.S. Navy Chaplain. *Supra* I.B-C & III.A. Each of these Defendants recommended or made a final determination, as permitted by his or her level of responsibility under these DoD and Navy regulations, to reject Plaintiff Heap because of his Humanist religious beliefs and his endorsement by The Humanist Society, in violation of the constitutional provisions alleged in Counts II-VI.

232.    The Humanist Society alleges the constitutional violations in Counts II-VI against Defendants Tidd, Garfola Wright, Kibben, Bailey, Rutherford, Horn, and John and Jane Does #31-40 in their individual capacities pursuant to *Bivens*.  Department of Defense and Navy regulations provided each of these Defendants with authority and responsibility to make a final decision and/or recommendation as to whether to recognize The Humanist Society as a religious organization qualified to endorse applicants for the U.S. Navy chaplaincy.  *Supra* I.B-C & III.A. Each of these Defendants recommended or made a final determination, as permitted by his or her level of responsibility under these DoD and Navy regulations, to deny recognition to The Humanist Society as a qualified religious organization because of its Humanist convictions, in violation of the constitutional provisions alleged in Counts II-VI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A.      Declaring pursuant to 28 U.S.C. §§ 2201 & 2202  that the Navy Defendants' and AFCB Defendants' rejection of Dr. Heap's application and refusal to recognize The Humanist Society as a qualified endorsing organization violated Plaintiffs' rights under the Religious Freedom Restoration Act and the First and Fifth  Amendments and the No Religious Tests Clause of the United States Constitution;

B.      Ordering that Defendants instate Jason Daniel Heap as a Navy chaplain with full and equal rights and benefits as other Navy chaplains immediately, and awarding Dr. Heap backpay beginning May 27, 2014, and monetary damages;

C.      Ordering that the Defendants be required to recognize The Humanist Society as a qualified ecclesiastical endorser within the meaning of all applicable Department of Defense and Navy instructions and regulations on a full and equal basis as other qualified ecclesiastical endorsing organizations, or, alternatively, declaring the Navy and Department of Defense's procedures requiring chaplaincy candidates to be endorsed by a religious organization unconstitutional and void, and awarding monetary damages to the Humanist Society;

D.      Enjoining the Defendants from requiring The Humanist Society to comply with the procedures for first-time ecclesiastical endorsers in DoDI 1304.28, or any other procedures different from those applied to other qualified ecclesiastical endorsing organizations;

E.      Enjoining the Defendants from rejecting applications from candidates for the Navy chaplaincy and from organizations seeking to become qualified ecclesiastical endorsers on the basis that the candidates and/or organizations are Humanists, or, alternatively, declaring that

the Defendants may not require that applicants for the chaplaincy be adherents of any religion; and

      F.     Awarding Plaintiffs the reasonable costs and expenses of this action, including attorneys' fees in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412; the Civil Rights Act, 42 U.S.C. § 1988;  the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb; and/or any other applicable statute or rule of law or equity.

November 5, 2014

Respectfully submitted,

Joshua S. Devore (# 45312)
R. Joseph Barton
Matthew A. Smith
Times Wang

COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Ave., NW
Suite 500, East Tower
Washington, DC 20005
Telephone:  (202) 408-4600

*Attorneys for Plaintiffs*