1

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF VIRGINIA
2         ALEXANDRIA DIVISION

3
JASON DANIEL HEAP, *ET AL.*        )
4                                  )
                                   )
5     VS.                          )   1:14-CV-1490  JCC/TCB
                                   )
6                                  )   ALEXANDRIA, VIRGINIA
                                   )      OCTOBER 30, 2015
7                                  )
HON. ASHTON CARTER, *ET AL.*       )
8    _____  )

9

10

11

12

13   _____

14            TRANSCRIPT OF MOTIONS HEARING
       BEFORE THE HONORABLE THERESA CARROLL BUCHANAN
15            UNITED STATES MAGISTRATE JUDGE

16   _____

17

18

19

20

21

22

23

24   **Proceedings reported by stenotype, transcript produced by**

25   **Julie A. Goodwin.**

1                    A P P E A R A N C E S

2

3   FOR THE PLAINTIFFS:
         COHEN MILSTEIN SELLERS & TOLL PLLC
4        By:  MR. JOSHUA S. DEVORE
                   -AND-
5        MR. ROBERT A. BRAUN
                   -AND-
6        MR. TIMES WANG
         1100 New York Avenue, N.W.
7        Suite 500, East Tower
         Washington, D.C.  20005
8        202.408.4600
         jdevore@cohenmilstein.com
9

10

11  FOR THE DEFENDANTS:
         UNITED STATES ATTORNEY'S OFFICE
12       By:  MS. ANTONIA KONKOLY
         Assistant U.S. Attorney
13       2100 Jamieson Avenue
         Alexandria, Virginia  22314
14       703.299.3700
         Antonia.Konkoly@usdoj.gov
15

16       U.S. DEPARTMENT OF JUSTICE -
         CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
17       By:  MR. KIERAN G. GOSTIN
         20 Massachusetts Avenue NW
18       Washington, D.C.  20530
         202.353.4556
19       kieran.g.gostin@usdoj.gov

20       U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION
21       FEDERAL PROGRAMS BRANCH
         By:  MR. GREGORY P. DWORKOWITZ
22       20 Massachusetts Avenue, NW
         Room 7336
23       Washington, D.C.  20530
         202.305.8576
24       gregory.p.dworkowitz@usdoj.gov

25

1                        A P P E A R A N C E S

2

3        OFFICE OF THE JUDGE ADVOCATE GENERAL
         GENERAL LITIGATION DIVISION (Code 14)
4        By:  MAJOR CINDIE BLAIR
         United States Marine Corps
5

6
OFFICIAL U.S. COURT REPORTER:
7        MS. JULIE A. GOODWIN, CSR, RPR
         United States District Court
8        401 Courthouse Square, Tenth Floor
         Alexandria, Virginia  22314
9        512.689.7587
         JGoodwinEgal@gmail.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1  (OCTOBER 30, 2015, FTR Gold, OPEN COURT.)

2          COURTROOM DEPUTY:  *Heap, et al. versus Hagel, et al;*

3  case 14-CV-1490.

4          Counsel, please note your appearance for the

5  record.

6          MR. DEVORE:  Good morning, Your Honor.

7          THE COURT:  Good morning.

8          MR. DEVORE:  Joshua Devore with Cohen Milstein.  With

9  me is my associate, Robert Braun, who will present argument

10  today, and Times Wang.

11          THE COURT:  All right.

12          MR. DEVORE:  And at the outset, because of the issues

13  addressed we were going to ask for the courtroom to be sealed.

14          THE COURT:  We don't normally --

15          MR. DEVORE:  It may not --

16          THE COURT:  -- do that.

17          MR. DEVORE:  -- matter since there's nobody else here.

18          THE COURT:  Why would I do -- we don't do that

19  normally.  Why would I seal it?

20          MR. DEVORE:  Well, only because some of the issues

21  involved these documents that have been clawed back, and so we

22  didn't want to reveal them or risk revealing any of the

23  contents of those.

24          THE COURT:  Okay.  Well, there's no one here anyway,

25  but I'm not going to seal the courtroom.  I mean, we can talk

1  around them if need be.  This is a matter of public record.

2  Frankly, you're being recorded, so.

3          MR. DEVORE:  Understood.

4          THE COURT:  Okay.

5          UNIDENTIFIED ATTORNEY:  We were just trying to

6  prevent -- protect the confidentiality of their documents.

7          THE COURT:  Okay.  Well, I'm going to assume that

8  nobody is going to say out loud what was in the context of

9  them.  I think that we can really just talk about descriptively

10 what these documents involve.  Okay?

11         MR. DEVORE:  Okay.  Thank you.

12         THE COURT:  All right.  And -- sorry.  Who's here for

13 the Government?

14         MS. KONKOLY:  Good morning, Your Honor.  Toni Konkoly

15 from the U.S. Attorney's office.  With me is Kieran Gostin and

16 Gregory Dworkowitz and Major Cindie Blair, and Mr. Gostin will

17 be arguing for the Government.

18         THE COURT:  Okay.

19           This is on the plaintiffs' motion to compel.  Do

20 you have anything to add to that?

21         MR. BRAUN:  Yes, Your Honor.

22           So this is an equal protection and establishment

23 clause case that turns on the Government's intent in denying

24 the plaintiffs' employment application.  So I think it helps

25 because a lot of us aren't really all that familiar with

1   Humanism.  I wasn't before I started working on this case pro

2   bono.  I think it helps to sort of reframe this in a more

3   familiar context.  So let's consider a sex discrimination case

4   by a woman whose employment application to become a firefighter

5   has been rejected.

6            The Government's position is effectively as

7   follows.  If the fire department at the same time that it

8   considered that woman's application was also considering

9   establishing a policy prohibiting all women from becoming

10  firefighters and some of the same people who were involved in

11  establishing that policy were also the key decision makers and

12  reviewing that woman's application, the Government's position

13  is that that -- that evidence would not be relevant to the

14  lawsuit.

15           But the Government's going even further than this.

16  The Government also says that the fire department's discussions

17  of how to respond to inquiries from the media and others about

18  the denial of the female firefighter's application which may

19  reflect the reasons for that denial are also somehow irrelevant

20  to the lawsuit.

21           Now, let's consider if --

22           THE COURT:  Well --

23           MR. BRAUN:  -- what indication --

24           THE COURT:  -- it's not just -- they're not making a

25  relevance objection really.  Well, they are to some extent,

1  which I've already dealt with.

2          MR. BRAUN:  Sure.

3          THE COURT:  But the issue before me right now is

4  primarily the deliberative process privilege and

5  attorney-client -- to the other assertions of privilege that

6  they've made.

7          MR. BRAUN:  Yeah.  We -- we entirely agree with that.

8          THE COURT:  Okay.

9          MR. BRAUN:  The problem is in their brief they frame

10 these documents as collateral and thus are relevant to our

11 case.  And so --

12         THE COURT:  Well --

13         MR. BRAUN:  -- I agree that it's not a relevant

14 objection.  We're with you, Your Honor.

15         THE COURT:  Okay.

16             All right.  Go ahead.  I mean, I've already

17 narrowed the scope of the discovery.

18         MR. BRAUN:  We agree.

19         THE COURT:  Okay.

20         MR. BRAUN:  So we're agreeing with you.  We think

21 these documents are relevant and not collateral.

22         THE COURT:  Okay.

23         MR. BRAUN:  Now, what if in addition --

24         THE COURT:  I don't know, frankly, whether they're

25 relevant or not.  I mean, I haven't seen the documents, so

 1  I'm --

 2          MR. BRAUN:  Sure.

 3          THE COURT:  And that issue is not really before me.

 4  The issue before me is the privilege protections.

 5          MR. BRAUN:  That's right.

 6          THE COURT:  Okay.

 7          MR. BRAUN:  But their primary argument in their -- we

 8  agree with you.  Their primary argument in their brief -- I

 9  mean, it takes up I don't know about the majority --

10          THE COURT:  Well, it's not their primary argument.

11  They deal with -- they deal with the other issues as well.

12          MR. BRAUN:  Sure.  One of their primary arguments is

13  that the documents shouldn't be produced because they're

14  collateral to our case.

15          THE COURT:  Right.  Okay.

16          MR. BRAUN:  So that's what I'm responding to now.

17          THE COURT:  Okay.

18          MR. BRAUN:  Now, what if in addition to the above

19  despite being on notice of the litigation the fire department

20  also intentionally destroyed every contemporaneous document

21  reflecting the fire department's consideration of the woman's

22  application.  And then to top it off, after receiving a

23  litigation hold letter from the female applicant's attorney,

24  failed to preserve the entire --

25          THE COURT:  Well, you don't have to put this in

1 | theoretical terms that involve a woman.

2 |       MR. BRAUN:  Sure.

3 |       THE COURT:  I can understand this on the --

4 |       MR. BRAUN:  Absolutely.

5 |       THE COURT:  -- actual grounds.  Okay?

6 |       MR. BRAUN:  Yeah.  My --

7 |       THE COURT:  All right.

8 |       MR. BRAUN:  My issue was you can make it a race

9 | discrimination case, a sex discrimination --

10 |       THE COURT:  I understand.

11 |       MR. BRAUN:  -- case regardless.

12 |       Sure.  And so that's -- that's basically this case.

13 | That's what's happening here.

14 |       Now, the other thing that I want to point out is

15 | the deliberate process privilege is a qualified privilege.  And

16 | the Fourth Circuit in *Ethel Corporation* says it's supposed to

17 | be applied narrowly.  So that means that unlike the

18 | attorney-client privilege, even if the documents are

19 | deliberative and predecisional, the Government doesn't have a

20 | right to withhold those documents unless it can show that the

21 | disclosure of those specific documents would specifically harm

22 | the Government and that the harm to the Government would

23 | outweigh the plaintiffs' interest in --

24 |       THE COURT:  And they still have not given you a

25 | declaration?

1          MR. BRAUN:  No.

2          THE COURT:  Okay.

3          MR. BRAUN:  We've received no declarations from the

4   Government.  And I'll -- I'll deal with that right now.

5          THE COURT:  Okay.

6          MR. BRAUN:  So they're required under Supreme Court

7   precedent and the laws of various courts to actually provide

8   affidavits that -- from a policy official from the Navy or DOD

9   stating that the agency reviewed each of the documents that

10  they've withheld and determined on the -- on -- withheld on

11  deliberative process privilege grounds and determined that it's

12  in the public's interest to withhold those documents.  So as a

13  result, because they haven't provided this, this affidavit,

14  they have no right, they have not established any right to

15  withhold any of these documents.

16          And this affidavit requirement is pretty important.

17  The reason why the Supreme Court established this for all

18  executive privileges and why other courts have also applied

19  this requirement is to ensure that somebody from the agency

20  itself reviewed these documents, rather than document reviewer

21  attorneys, and determined that it was in the public's interest

22  to withhold the documents on deliberative process privilege

23  grounds.

24          The Government's had months to -- to compile these

25  affidavits.  It's had months since it determined that

1  these -- it was going to withhold these documents on

2  deliberative process privilege grounds.  And as far as we can

3  tell, it's made no efforts to obtain these declarations.

4          We also specifically disclosed to the Government a

5  month ago in a meet and confer that -- I was on this call --

6  that we planned to challenge on the very grounds that we

7  ultimately challenged the withholding of these documents that

8  we planned to challenge the withholding of those documents on

9  the grounds that the plaintiffs' interest in those documents

10  outweighed the -- the defendants' interest in withholding them.

11  And so they were also on specific notice at that argument a

12  month ago, and again, no affidavits submitted in connection

13  with their -- with their briefing.

14          THE COURT:  Uh-huh.

15          MR. BRAUN:  And they do point to one -- to one

16  affidavit from *Burrow* (phonetic), who's an attorney by the way,

17  not a policymaking official from the Navy, for only two of the

18  hundreds of documents that they withheld on deliberative

19  process privilege grounds, but he's a litigation manager so not

20  a policymaking official, so he doesn't have any -- he's not an

21  el -- a person who's eligible to sign the affidavit.

22          The affidavit also states in conclusory terms that

23  the documents are predecisional and deliberative, but what's

24  required under *Reynolds* and the other case law that -- that

25  addresses this issue is an actual determination that would be

12

1  harmful to the Government to disclose the documents, and that's

2  not in the affidavit at all.

3         So, for those reasons you really don't even have to

4  get to anything else because they just haven't established

5  privilege.

6         THE COURT:  Do you have any real argument as to the

7  personal information that was redacted from the personal

8  e-mails?

9         MR. BRAUN:  Are you talking -- are you referring to

10  the Parisi e-mails?

11         THE COURT:  Right.

12         MR. BRAUN:  Yes.  I'll skip ahead to that then.

13         Yeah, so the Parisi e-mails, first of all, they

14  haven't established the privilege.  The Parisi e-mails

15  literally --

16         THE COURT:  Well, it's relevance.  That is a

17  relevance --

18         MR. BRAUN:  Oh, so we're talking about relevance --

19         THE COURT:  -- objection.

20         MR. BRAUN:  -- now.

21         THE COURT:  Well, I think you are if you're talking

22  about --

23         MR. BRAUN:  So there are two --

24         THE COURT:  -- personal information that's not

25  responsive to your request, which is what they redacted as I

13

1   understand it.

2          MR. BRAUN:  Sure.  So there --

3          THE COURT:  Primarily, except for, I think, you know,

4   there was -- part of it they were saying was possibly

5   priest-penitent.

6          MR. BRAUN:  Yes, so that's why.  So would you like me

7   to just address the redact -- the relevance?

8          THE COURT:  Well, deal with the relevance first, yeah.

9          MR. BRAUN:  Okay.

10           So on relevance grounds they've literally redacted

11  every single word from multipage e-mail chains --

12         THE COURT:  Uh-huh.

13         MR. BRAUN:  -- except for like the individual sentence

14  that says the word Humanist or --

15         THE COURT:  Uh-huh.

16         MR. BRAUN:  -- or Heap or something like that.  So, we

17  have absolutely no context for these sentences based on the

18  redactions.  We're not talking about like redacting a separate

19  e-mail in a chain or even redacting separate paragraphs.  We're

20  talking about redacting every sentence in the same paragraph

21  around the sentence that mentions the word Humanist.

22           So we have absolutely -- so they basically

23  prevented us from having any context for these documents.  So

24  we don't know how we can use them then --

25         THE COURT:  Okay.

1          MR. BRAUN:  -- because there's no context.

2          THE COURT:  Okay.

3          MR. BRAUN:  There's also a protective order that's

4   entered in this case, so even if these documents are disclosed

5   to us, they're not going to be disclosed to the public.  And so

6   there's -- I mean, they just haven't -- and they haven't

7   provided any basis for the redactions.  So ordinarily when, you

8   know, you're redacting something like this, and the federal

9   rules permit this, you know, if it causes embarrassment or if

10  it would be burdensome.  But that's actually not -- they

11  haven't provided any of those reasons.  All they've said is

12  that the redactions are for relevance reasons --

13          THE COURT:  Okay.

14          MR. BRAUN:  -- so I'm not even sure -- I mean, there's

15  case law that says that under those circumstances redactions

16  aren't even permitted under the federal rules.

17          THE COURT:  Okay.

18             All right.  Let me hear from the Government for a

19  minute and then I'll -- if I need to, I'll come back.

20          MR. BRAUN:  Sure.  Appreciate it, Your Honor.

21          THE COURT:  Would you first tell me how the documents

22  were destroyed, because I'm not quite sure I understand.

23          MR. GOSTIN:  Yeah -- yes, Your Honor.  So when a CARE

24  Accession Board meets to determine whether to accept or deny an

25  application or their recommendation about whether to accept or

1  deny an application for a chaplain candidate, they put together

2  score sheets for those chaplain candidates.  And afterwards,

3  because those meetings are supposed to be confidential by Navy

4  regulation, all those documents are destroyed after the fact.

5  And that happened before this lawsuit was filed.

6          THE COURT:  Did it happen before you thought that

7  there would be a lawsuit?

8          MR. GOSTIN:  Your Honor, I wasn't personally involved

9  in the case at the time so I don't know if I can speak to that,

10 nor do I think it's really before the Court because they --

11         THE COURT:  Well, no, it is before me because the

12 reason for the destruction is before me.  I mean, they're

13 asserting that these documents shouldn't have been destroyed.

14 And in order for me to find that it was all right for you to

15 destroy them, I also have to find essentially that -- that

16 there was no reason for you to have thought you needed to keep

17 them.

18             So wasn't this an issue in terms of whether or not

19 you thought you might have needed to keep them at that point?

20         MR. GOSTIN:  Your Honor, I think at the time that it

21 happened there had been some communications from Heap's counsel

22 about a potential lawsuit.  At the time I think the Navy's

23 position was that those communications were about Heap's

24 candidacy going to a CARE Advisory Group.  They were concerned

25 that he had not been put before a CARE Advisory Group, so I

1    don't think they necessarily were on notice about those

2    particular documents.

3             In addition, to show that the destruction of

4    documents should result in adverse --

5             THE COURT:  So these were -- these were the sheets on

6    which the members of the board voted?

7             MR. GOSTIN:  Yes.

8             THE COURT:  What -- what was on there other than a yes

9    or a no?

10            MR. GOSTIN:  I've never seen the documents, so I don't

11   know.  But there is a score sheet, which we have provided the

12   score sheet for them, which goes through the different reasons

13   for why they would accept or reject someone, and so there's

14   different categories.  Do they have ministry experience.

15            THE COURT:  Is this a score sheet that was with the

16   defendants' -- with the plaintiffs' scores particularly, or are

17   you just saying it's a blank score sheet?

18            MR. GOSTIN:  We have provided them with a blank score

19   sheet.

20            THE COURT:  So you don't have the plaintiffs' scores?

21            MR. GOSTIN:  No, we do not have the plaintiffs'

22   scores.

23            THE COURT:  Who made the decision to destroy them and

24   how were they -- I mean, how were they destroyed?  We're not

25   talking about, as I understand it, something that's, you know,

1 on an e-mail, that's e-mails on a server that are just

2 regularly destroyed in the normal course of business.  We're

3 talking about something that is, as I understand it, you-all

4 had notice would be an issue and notice that a lawsuit might be

5 filed over this, did you not?

6         MR. GOSTIN:  Yes, Your Honor.  I mean --

7         THE COURT:  So then, who made the decision to destroy

8 them?

9         MR. GOSTIN:  I don't know the person who is personally

10 involved in making that decision.  I don't know.  And the

11 reason I don't know is because plaintiffs have never brought a

12 sanctions motion about it where we would be required to

13 investigate that and determine -- you know, if there's a

14 sanctions motion brought, one -- one element is whether you're

15 reasonably anticipating litigation, but there's other elements

16 as well such as whether it's going to cause any negative harm

17 or whether it was done in bad faith.  They never brought that

18 motion or even brought that issue up to us.

19         THE COURT:  I haven't gotten to a motion --

20         MR. GOSTIN:  Yeah.

21         THE COURT:  -- for sanctions yet.  First --

22         MR. GOSTIN:  Yeah.

23         THE COURT:  -- you have a motion to compel.

24         MR. GOSTIN:  Yeah, I understand, Your Honor.

25         THE COURT:  Okay?  So --

1          MR. GOSTIN:  I would like to also -- you know, we

2    have -- because that information has been destroyed, we are

3    giving them what we think is the best possible other evidence

4    of that.  We are allowing them to depose every voting member of

5    the CARE Advisory Group, and we are going to allow those people

6    to speak about what scores they gave.

7          THE COURT:  Okay.

8          MR. GOSTIN:  We are not going to assert the

9    deliberative process privilege --

10          THE COURT:  Okay.

11          MR. GOSTIN:  -- over that or any other privilege.

12          THE COURT:  All right.

13          Now, what about the -- why haven't you not provided

14    a declaration as to deliberative process privilege?

15          MR. GOSTIN:  Well, Your Honor, we did provide the one

16    declaration to the two documents that they discuss in any

17    specificity.

18          That's the Burrow declaration.  And that

19    declaration does talk about how the Navy has been discussing a

20    policy about Humanists and whether they would want Humanist

21    chaplains, but that no decision has ultimately been made and

22    therefore that, you know, revealing that information would be

23    problematic for them.

24          In terms of the other -- the other declarations, I

25    mean, they have filed a motion a few days ago seeking to

1   uncover I think, you know, all 500 documents, 400 of which have

2   been withheld under the deliberative process privilege.

3          THE COURT:  Uh-huh.

4          MR. GOSTIN:  That's simply not enough time for the

5   Government to go through and provide a declaration for each

6   one.  What courts normally require --

7          THE COURT:  Well, you don't have to provide a

8   document -- a declaration as to each one.

9          MR. GOSTIN:  Yeah.

10         THE COURT:  But I think you do have to provide a

11  declaration that says that someone in charge has reviewed them

12  all, and that they all relate to the deliberative process.

13  That's what you need to do.

14             And I would assume that before you made the

15  assertion of privilege someone did review all of these

16  documents.  Now maybe at this point it was counsel --

17         MR. GOSTIN:  Uh-huh.

18         THE COURT:  -- but you don't have to have a

19  declaration as to each individual one.  So why has that not

20  been done?  It seems like you've had enough time.

21         MR. GOSTIN:  Your Honor, we believe that there were

22  primary legal issues and that we addressed the two major

23  documents that --

24         THE COURT:  Why didn't you think you needed a

25  declaration?

1          MR. GOSTIN:  Your Honor --

2          THE COURT:  Why would you not think that?

3          MR. GOSTIN:  Your Honor, I -- I apologize if we

4   somehow failed to --

5          THE COURT:  Okay.

6          MR. GOSTIN:  -- if we failed to provide that and we

7   should have.  We are happy to go back and provide that

8   declaration if you -- if Your Honor would like.

9          THE COURT:  Okay.

10         MR. GOSTIN:  And we will absolutely do that.

11         THE COURT:  All right.  And what about the Parisi

12  e-mails?  Other than the priest-penitent privilege -- and I'm

13  just going to assume here for sake of argument that since you

14  made that assertion there is something in there that can be

15  considered.  Why not produce the rest of the e-mails subject to

16  counsel's eyes?

17         MR. GOSTIN:  Well, Your Honor, first of all, the

18  protective order in this case would not cover that information.

19  The protective order was entered to protect privacy act

20  information, which is Social Security numbers, things like

21  that.  We would have no basis to designate this under the

22  protective order.

23         THE COURT:  Well, did you talk to plaintiffs' counsel

24  about that?

25         MR. GOSTIN:  Your Honor, we had difficulty discussing

1    these issues with plaintiffs' counsel because for so long the

2    Government did not have authority to represent Parisi in terms

3    of this subpoena.

4             THE COURT:  Okay.

5             MR. GOSTIN:  You know, it is something potentially --

6             THE COURT:  Okay.

7             MR. GOSTIN:  -- we could go back and talk about if

8    that --

9             THE COURT:  All right.

10            MR. GOSTIN:  -- if Your Honor would like.

11            THE COURT:  Anything else?

12            MR. GOSTIN:  No, Your Honor.  I think I would just

13   like to briefly just discuss their point about a sex

14   discrimination case or a gender discrimination case.

15            THE COURT:  I don't need to deal in hypotheticals.

16            MR. GOSTIN:  Yeah.

17            THE COURT:  Okay?

18            MR. GOSTIN:  I agree, Your Honor.

19            THE COURT:  I've got this case before me --

20            MR. GOSTIN:  I agree.

21            THE COURT:  -- so --

22            MR. GOSTIN:  Okay.

23            THE COURT:  -- okay.

24            MR. GOSTIN:  I will leave that alone then.

25            THE COURT:  Okay.

22

1          MR. GOSTIN:  Thank you, Your Honor.

2          THE COURT:  Do you have anything you want to add?

3          MR. BRAUN:  Just briefly.

4          THE COURT:  Okay.

5          MR. BRAUN:  If the protective order as it's currently

6    drafted wouldn't allow us to require these documents to be

7    maintained -- the Parisi e-mails to be kept confidentially, we

8    would be very happy to work with the Government.  This is the

9    first time that idea --

10         THE COURT:  Okay.

11         MR. BRAUN:  -- has been raised.  We --

12         THE COURT:  Well, I can understand though the issue

13   that they weren't representing Mr. Parisi either, so.

14         MR. BRAUN:  Well, except that they've had the e-mails

15   in their personal possession for about a month.

16         THE COURT:  But he provided it to them so.  It doesn't

17   matter.  It's neither here nor there.

18         MR. BRAUN:  Sure.  But I just wanted to say we'd be

19   happy --

20         THE COURT:  Okay.

21         MR. BRAUN:  -- to keep them under seal.

22              The only -- and the only other thing I want to

23   mention is, I mean we -- we are planning on bringing -- likely

24   to bring a sanctions motion at some point, but we want --

25         THE COURT:  Well, we'll deal with --

1      MR. BRAUN:  -- we want discovery on that --

2      THE COURT:  Let me -- let me deal with that in a

3  moment.  Okay?

4      MR. BRAUN:  Sure.

5      THE COURT:  Here's the issue as far as the

6  deliberative process privilege is concerned.  I think that you

7  do have an obligation to provide a declaration, and I'm going

8  to order that you do that in a timely fashion.  It shouldn't

9  take that long and you've had a long time.

10      But let me warn the plaintiffs here.  When I'm

11  looking at the category of documents and their description of

12  documents that they say fall into the deliberative process, I

13  doubt that I'm going to order them to release them.  Now, that

14  doesn't mean that I wouldn't, you know, take a look at these if

15  I need to *in camera*, perhaps a representative sample or

16  something like that.  I'm not inviting you to give that to me,

17  by the way.

18      But what I'm saying is that from a general

19  description of the documents that are being withheld pursuant

20  to deliberative process, if they provide a declaration that

21  covers all of these, don't get your hopes up -- but the

22  Government is going to have to provide one, and I don't see any

23  reason really why they shouldn't be able to provide that within

24  two weeks from today.

25      Now, as to the Parisi e-mails, I'm going to order

24

1   that you turn all of the e-mails over without redactions, only

2   subject to two things.  One is that this is going to be turned

3   over to attorneys eyes only, and we don't need an order doing

4   that because I'm telling you right now.

5           And secondly, though, that you can still redact any

6   specific priest-penitent discussion at this point.  I'll allow

7   you to still redact that, but that's all at this point.  And it

8   must truly be priest-penitent.  Okay?

9           And is this a priest, by the way?

10          MR. GOSTIN:  Yes, Your Honor.

11          THE COURT:  Okay.  All right.

12          And as far as the destruction of the minutes is

13  concerned, we're facing a whole new set of discovery rules that

14  deals specifically with spoliation starting November 1.  And I

15  think that by the time we get to any sanctions motion we're

16  going to be under the new rules, which means that how I deal

17  with this is very different.

18          And at this point I don't think I need to deal with

19  further discussion as to why these minutes were destroyed.  I

20  am concerned that they were destroyed.  However, looking ahead,

21  the first step is to see if the information can be provided

22  through other means.

23          So, you've got the depositions coming up of the

24  members.  I think you're going to have to go through those, and

25  hopefully, you will get adequate information from those people

1  that will fill in the gap.  Okay?

2         Now, is there anything else that I didn't address?

3  If feels like there is.

4         MR. BRAUN:  One thing, Your Honor.  Since we didn't

5  talk about the -- get a chance to talk about the individual

6  documents.

7         THE COURT:  Uh-huh.

8         MR. BRAUN:  Is it possible to have an additional

9  hearing after they submit this affidavit where we can discuss

10 those? ///////////////////////////////////////////

11 ////////////////////////////////////////////////////////

12 /////////////////////////////////////////////////////

13 //////////////////////////////////////////////////////////

14 /////////.

15        THE COURT:  What document are you talking about?

16        MR. BRAUN:  These are the Tidd documents.

17        THE COURT:  Pardon me?

18        MR. GOSTIN:  Your Honor --

19        MR. BRAUN:  These are the Tidd documents --

20        MR. GOSTIN:  -- we specifically said we wouldn't talk

21 about the content of these documents.

22        MR. BRAUN:  Well, this -- can we have it --

23     (TALKING ON TOP OF EACH OTHER.)

24        MR. BRAUN:  Can we have an opportunity to talk about

25 these documents at some point because --

1    THE COURT:  Well, I think what you'll have to do then

2  at that point is raise a specific motion to compel as to

3  specific documents.

4    MR. BRAUN:  Sure.  These are in our motion.

5    THE COURT:  Okay.  But --

6    MR. BRAUN:  This is specifically --

7    THE COURT:  Sorry.  So what -- what I'm asking is, are

8  we talking about particular numbers here on the privilege log?

9    MR. BRAUN:  Yeah.  I think they're cited in our --

10    THE COURT:  Okay.

11    MR. BRAUN:  I think 19 is one of them, for instance.

12    THE COURT:  Pardon me?

13    MR. BRAUN:  Log entry 19, I believe.

14    THE COURT:  Okay.

15    MR. BRAUN:  And there are a bunch of other log entries

16  that --

17    THE COURT:  Let me just look.  Let me go back to your

18  brief of those pages.  Hold on a second.

19    MR. BRAUN:  It says log entry 19.  I don't know if

20  it's page (unintelligible).

21    THE COURT:  You're not talking about the documents

22  that are clawed back.

23    MR. BRAUN:  Yes, this is one of the documents that

24  we've seen and it was clawed back.

25    THE COURT:  Okay.

1          MR. BRAUN:  And we know what it says.  It specifically

2  refers to why our clients should --

3          MR. GOSTIN:  Your Honor, I just -- we shouldn't be

4  talking about the content of what's in this document --

5          THE COURT:  Well, he can speak in a general

6  description.

7          MR. BRAUN:  In a general description -- I'm not

8  quoting anything.

9          THE COURT:  Right.

10          MR. BRAUN:  In a general description, it specifically

11  refers to -- and this is one of the decision makers.

12          THE COURT:  Uh-huh.

13  //////////////////////////////////////////////////////

14  //////////////////////////////////////////////////////

15  //////////////////////////////////////////////////////

16  //////////////////////////////////////////////////////

17  ///////////////////////////////////

18          THE COURT:  And -- hold on just a second.  Sorry.

19          MR. BRAUN:  This is Tidd.

20          THE COURT:  Point me to the page in your brief, if you

21  would.

22          MR. BRAUN:  14.

23          THE COURT:  Sorry.

24              Okay, so -- and that was log entry number --

25          MR. BRAUN:  It's several log entries.  The withholding

1  description that I referred to is withholding description for

2  log entry 19.  The log entries I think include 219, 20, 33, and

3  455.

4           THE COURT:  And this was the response to, I think it

5  was a congressional inquiry?

6           MR. BRAUN:  I don't think so.  I think this is a Navy

7  that's -- the Chief of Chaplains Tidd was providing to the

8  Secretary of the Navy.

9           THE COURT:  Well, I mean, it still could be covered by

10  the deliberative process privilege.

11           MR. BRAUN:  Sure.  But it's -- it is not at all

12  collateral.  It is so specifically relevant to the allegations

13  in the case that I just -- I mean, they literally have not

14  cited a single --

15           THE COURT:  How many documents are there besides

16  these?  Is this the ones that you're specifically the most

17  concerned about or are there others?

18           MR. BRAUN:  I would say this is the most that we are

19  concerned about.  But the only reason we even know about this

20  is because it was --

21           THE COURT:  Claw back.

22           MR. BRAUN:  It was clawed back and produced to us.

23  We're concerned that there are -- a lot of the other documents

24  that they've decided to withhold -- which by the way, they've

25  sought to withhold on deliberative process privilege grounds

1  400 documents.  They only produced to us 1800.  So that a lot

2  of the other documents that they are trying to withhold are

3  just as relevant.  We just happened to have been able to see

4  this one because it was accidentally produced to us.

5         THE COURT:  I understand what you're saying, but that

6  doesn't make it not deliberative.

7         MR. BRAUN:  Oh, it may be deliberative, but every

8  single case that we've seen that talk about documents that are

9  this relevant say that when you apply the balancing factors in

10 a -- in a civil rights lawsuit --

11        THE COURT:  Uh-huh.

12        MR. BRAUN:  -- where the main issue in the case is the

13 deliberation over the -- the applicant's employment

14 application, the balance swings to the plaintiff --

15        THE COURT:  Okay.

16        MR. BRAUN:  -- in favor of disclosure.

17        THE COURT:  All right.  Let me hear --

18        MR. BRAUN:  And there's a protective order in this

19 case, and nobody else is --

20        THE COURT:  Let me hear from the -- let me hear --

21        MR. BRAUN:  -- already see the document.

22        THE COURT:  Let me hear from the Government.

23        Why wouldn't they -- when they're dealing

24 specifically with Heap and not Humanists generally, why would

25 you not disclose -- why would you not provide it?

1          MR. GOSTIN:  Your Honor, just a couple of points.

2    One, I think this is part of the problem with them bringing an

3    omnibus motion rather than citing to specific documents.

4          THE COURT:  Just answer my question.

5          MR. GOSTIN:  All right.  Your Honor, that document was

6    relating to a congressional inquiry involving --

7          THE COURT:  Did it deal specifically with Heap?

8          MR. GOSTIN:  So, Your Honor, let me -- I want to be

9    careful about how I describe this, and I don't want to give the

10   content of the document away.  But, the Navy has been having an

11   ongoing discussion about whether to permit Humanist chaplains

12   to serve.

13         THE COURT:  Right.

14         MR. GOSTIN:  In the course of that discussion, Heap's

15   name is sometimes referenced, or the fact that a Humanist

16   chaplain has applied has been referenced, but that doesn't mean

17   that those deliberations are specifically about his

18   application --

19         THE COURT:  And you're saying that these specific

20   documents were in response to a congressional inquiry?

21         MR. GOSTIN:  So --

22         THE COURT:  Do you know that?

23         MR. GOSTIN:  Yes, Your Honor.  What happened is there

24   was a congressional inquiry about it.  A letter was sent -- was

25   sent back.  And as they were discussing that letter, because

 1   this became a public issue, the chief of chaplains whose chief

 2   responsibility is to provide advice to the Secretary of Navy

 3   about religious matters, also sent a memo to -- to the

 4   Secretary of Navy giving his views on whether Humanist

 5   chaplains should serve.  It was not the deliberations of the

 6   CARE Advisory Group or anything like that.  It did -- it was

 7   not to say, reject Heap's application.

 8              THE COURT:  Is this his personal views, then, rather

 9   than a deliberative -- are you -- I'm sorry.  Are you

10   saying he --

11              MR. GOSTIN:  No, he's --

12              THE COURT:  -- something different than a deliberative

13   process?

14              MR. GOSTIN:  No, he's giving his policy

15   recommendations --

16              THE COURT:  I see.  Okay.

17              MR. GOSTIN:  -- about Humanist chaplains in general.

18              THE COURT:  All right.

19              So here's what we're going to do is we're going to

20   take it one step at a time.  They're going to have to get the

21   declaration together, and you're going to have to have somebody

22   who knows what they're doing look at these documents and decide

23   whether they really are part of the deliberative process and

24   then we'll take it from there at that point.  And then if you

25   need to bring another motion to compel specifically after you

 1    review the declaration, then I'll consider it.

 2              I don't really want to look at 450 documents and

 3    I'm not going to, so if it comes down to it we'd have to be

 4    talking about representative -- samples of reps.  These aren't

 5    the samples.  But you're going to have to take it one step at a

 6    time.  Okay?

 7              MR. GOSTIN:  Yes, Your Honor.

 8              THE COURT:  All right.  Anything else?  Okay.

 9              What?  Oh, I'm going to grant the sealing order.

10              Right.  And I'll grant your motion to file under

11    seal as well.

12              MR. BRAUN:  Thank you, Your Honor.

13              MR. GOSTIN:  Your Honor, can I just ask one thing?

14    Would it be possible to have the transcript sealed as well

15    since I do think --

16              THE COURT:  No.

17              MR. GOSTIN:  -- the content of the documents --

18              THE COURT:  Well, I don't think that that's content

19    that's --

20              MR. GOSTIN:  He described what the recommendation in

21    the letter was.

22              THE COURT:  Is that a shock, seriously?

23              MR. GOSTIN:  I think there are a lot of different -- I

24    mean, but that -- the whole point of the deliberative process

25    privilege is that we don't want to give out those opinions

1  because we are still debating them.  There is no decision been

2  made in the Navy yet.

3          THE COURT:  I don't even know how we do that.  Well...

4          MR. GOSTIN:  To seal.  I think it -- I'll refer to an

5  AUSA who is here, practicing right here.

6          MS. KONKOLY:  Your Honor, this --

7          THE COURT:  I guess I can put the --

8          MS. KONKOLY:  This did just come up in --

9          THE COURT:  -- the tape under seal.

10          MS. KONKOLY:  -- *Hyatt* case, which Your Honor has also

11  worked on.  And in that context the plaintiff wanted to seal

12  specific lines in a transcript from a hearing last December and

13  there was a process.

14          THE COURT:  No.  What I'm talking about is the tape

15  recording.

16          Who can access it?  Can anybody access it other

17  than the court reporters, Tina, and us, the audiotape?

18          COURTROOM DEPUTY:  The way it is now, if someone wants

19  to request a copy, they can.

20          THE COURT:  Okay.

21          All right.  So I'll seal the tape recording of

22  this.  And if you order a transcript, I'll order that

23  the -- that those lines -- that that couple of statements of

24  yours are going to be redacted.  Okay?

25          MR. BRAUN:  That's fine.

1          MR. GOSTIN:  Thank you, Your Honor.  I appreciate

2     that.

3          THE COURT:  Okay.  Anything else?

4              All right.  The Court stands in recess.

5          COURT SECURITY OFFICER:  This Court stands in recess.

6          (PROCEEDINGS CONCLUDED AT 10:43 A.M.)

7                              -oOo-

8

9

10

11

12

13   UNITED STATES DISTRICT COURT    )
     EASTERN DISTRICT OF VIRGINIA    )

14
             I, JULIE A. GOODWIN, Official Court Reporter for
15   the United States District Court, Eastern District of Virginia,
     do hereby certify that the foregoing is a correct transcript
16   from the recorded proceedings of FTR Gold in the above matter,
     to the best of my ability.
17           I further certify that I am neither counsel for,
     related to, nor employed by any of the parties to the action in
18   which this proceeding was taken, and further that I am not
     financially nor otherwise interested in the outcome of the
19   action.
             Certified to by me this 19TH day of NOVEMBER, 2015.

20

21

22         __/s/_____
           JULIE A. GOODWIN, RPR
23         CSR #5221
           Official U.S. Court Reporter
24         401 Courthouse Square
           Tenth Floor
25         Alexandria, Virginia  22314